[Cite as *Nemcic v. Phelps*, 2014-Ohio-3952.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

SUE NEMCIC

      Plaintiff-Appellee

v.

CECIL W. PHELPS, et. al.

      Defendants-Appellants


Appellate Case No.    26066

Trial Court Case No.   2012-CV-1791


(Civil Appeal from
 Common Pleas Court)

. . . . . . . . . . .

## O P I N I O N

Rendered on the 12th day of September, 2014.

. . . . . . . . . . .

FRED MILLER, Atty. Reg. No. 0017872, 246 High Street, Hamilton, Ohio 45011
      Attorney for Plaintiff-Appellee

JOSE M. LOPEZ, Atty. Reg. No. 0019580, 18 East Water Street, Troy, Ohio 45373
      Attorney for Defendants-Appellants

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    In this case, Defendants-Appellants, Cecil W. Phelps, Cheryl Phelps, Aaron Phelps, and J&M Mart, LLC ("J&M") appeal from a judgment rendered in favor of Plaintiff-Appellee, Sue Nemcic, following a bench trial.[1]   Appellants contend that the trial court erred by sua sponte amending Nemcic's complaint to include a claim against J&M.

{¶ 2}    We conclude that the trial court lacked jurisdiction to amend the complaint in the absence of a motion requesting Civ.R. 60(B) relief.  Although the trial court could have amended its prior entry pursuant to Civ.R. 60(A), which allows amendment to address clerical errors, the amended judgment entry addressed a substantive issue, in that it changed the basis of liability for the judgment.  Because the order being appealed is a nullity, there is no appellate jurisdiction over the case.    Accordingly, Defendants' appeal must be dismissed.

I.   Facts and Course of Proceedings

{¶ 3}    This case arises from a dispute over a family-owned gas station and drive-through store (J&M Mart, referred to hereafter as "market"), located in Gratis, Ohio.   The real estate and business was owned by J&M, and Cecil Phelps (known as Wayne) is   J&M's sole member.  At the time of the events giving rise to this litigation, Wayne and his wife, Cheryl, were the parents of Aaron Phelps and were the in-laws of Lori Phelps.  (Aaron and Lori have

---

[1] For purposes of convenience, we will refer to the individual Defendants by their first names, or collectively, as Appellants.    We also note that Defendant, Lori Phelps, has not appealed from the judgment of the trial court.

since divorced).   In turn, Lori is the daughter of Plaintiff-Appellee, Sue Nemcic, who worked at the market between October 2008 and August 2011.

{¶ 4}   Before becoming employed at the market, Nemcic worked at Gratis Express, a convenience store in Gratis, Ohio, that was owned by Aaron and Lori.   In 2008, Aaron convinced Wayne that a drive-through could succeed at the location of a two-bay filling station that had been for sale for a year.   As a result, Wayne formed J&M, and purchased the property. During the time that renovations to the filling station were in process, Gratis Express went bankrupt, and J&M's market had to open immediately.

{¶ 5}   Nemcic was hired as a co-manager of the new enterprise, at an initial salary of $900 per week, beginning in February 2009.   Prior to that time, Nemcic had been working on a volunteer basis.[2]   Nemcic ran the cash register, did book-keeping, ordered supplies, wrote checks to suppliers, and paid bills.    In contrast, Aaron and Lori were paid $600 each per week, for doing very little.   Aaron and Lori also admitted taking cash from the business on a frequent basis.   According to Lori, she and Aaron each took between $50 and $200 in cash from the store each week.

{¶ 6}   By spring 2010, the business was in financial distress.   The State of Ohio  had sent a letter to Wayne indicating that if the delinquent state sales taxes were not paid, the market's liquor license would be revoked.   This letter was never shared with Wayne.[3]   As the

---

[2]   As with most evidence in this case, the facts are disputed.    Nemcic claimed that she worked on a volunteer basis to help out prior to February 2009.    In contrast, Aaron claimed that Nemcic was paid "under the table."    Nemcic's salary was also reduced over the period of her employment, to an ending salary of $600 per week. She left employment when Wayne told her that her salary would be reduced further, to $300 per week.

[3]   According to Nemcic and Lori, Aaron hid the tax letter from Wayne, and Aaron was also the one responsible for asking

result of a request from Lori and/or Aaron, the back taxes were paid with Nemcic's Chase credit card.

{¶ 7} The amount placed on Nemcic's credit card from April through November 2010 for delinquent taxes was about $19,069.20. Nemcic claimed that she had also given Aaron cashier's checks for J&M totaling $15,000, and had paid other taxes and expenses in 2011 on the Chase card as well as another credit card. In total, Nemcic claimed that J&M and Aaron owed her a total of about $35,800 for business expenses that she had paid. She also claimed that Aaron owed her about $9,530 for personal expenses that he had charged on her credit card without her permission. Nemcic testified that her daughter, Lori, did not owe her any money, because Lori had repaid her for personal expenses that she had charged on Nemcic's credit card.

{¶ 8} The payment of the overdue sales tax did not resolve the financial issues. Faced with continuing financial problems and difficulty in obtaining proper records for filing income tax returns, Aaron informed Wayne of the financial issues in April 2011. As a result, Wayne became involved in the business and investigated the record-keeping. Wayne admitted at trial that Nemcic had been repaid certain sums for the sales tax, because the store owed Nemcic the money. However, Wayne also claimed that Nemcic was not entitled to any further money, based on the following contentions: (1) his belief that about $21,870, other than payroll checks, had been deposited into Nemcic's own account over the pertinent time period; (2) his suspicion that Nemcic was skimming cash during her employment; and (3) his belief that Nemcic

Nemcic for money for the taxes. However, Aaron claimed that he never saw the letter, that Lori and Sue ran the store, and that he found out after the fact that Nemcic had paid for the taxes with her credit card. This inconsistency is typical of the trial testimony from all parties, which was replete with contradictions. Basically, all the parties disclaimed responsibility for the store's financial problems, claimed that the other side was responsible for managing the store, disputed amounts that had been incurred or repaid, and so forth.

was overpaid during her tenure of employment by about $75,000.   This latter point was based on Wayne's opinion that Nemcic should only have been paid at a rate of $8.00 per hour, or slightly more than minimum wage, due to his assessment of her job duties.

{¶ 9}   During a bench trial, the court granted a dismissal of the claims against Wayne and Cheryl after Nemcic presented her case.   After hearing the rest of the evidence, the trial court filed a Decision and Verdict Entry from Bench Trial on November 26, 2013.   In the decision, the trial court found in favor of Nemcic in the amount of $19,069.20 on her first claim for relief.   The court also found in Nemcic's favor on the third claim for relief, in the amount of $9,530.63, and concluded that Lori and Aaron would be jointly and severally liable for that entire amount.    Finally, the court rejected Nemcic's claims for punitive damages and attorney fees, and ordered J&M, Aaron, and Lori to pay court costs.   The court also denied J&M's counterclaim for unauthorized use of funds.

{¶ 10}   On December 10, 2013, Nemcic filed a motion for reconsideration, asking the court to order additional damages, including amounts expended for taxes in the year 2011, and interest on the credit card debt.   The court overruled the motion for reconsideration. Subsequently, on December 19, 2013, the court filed a judgment entry finding that Nemcic was entitled to judgment against J&M, Aaron, and Lori, pursuant to the first claim for relief, in the amount of $19,069.20, and against Lori and Aaron on the third claim for relief, in the amount of $9,530.63. The rest of the judgment entry reflected the matters set forth in the decision and verdict entry.

{¶ 11}   Subsequently, on January 2, 2014, the trial court filed an amended judgment entry, on its own accord.   The court noted that while the first claim for relief had excluded J&M,

the evidence indicated that J&M should be liable for payments made on its behalf. Accordingly, the court amended the complaint, pursuant to Civ.R. 15(B), to include J&M within the first claim for relief. The court also amended the complaint with respect to the third claim for relief, to include Lori as a person responsible for conversion of Nemcic's credit card. In all other respects, the court reaffirmed the judgment entry filed on December 19, 2013.

{¶ 12} All Appellants, other than Lori Phelps, appeal from the judgment entry filed on January 2, 2014. However, no notice of appeal was filed from the judgment entry filed on December 19, 2013.

## II. Did the Trial Court Err in Amending the Complaint?

{¶ 13} Appellants' Sole Assignment of Error states that:

The Trial Court Erred by Amending, Sua Sponte, Plaintiff's Complaint to Include a Claim Against J&M Mart, Pursuant to Civil Rule 15, and Over the Objections of Defendants.

{¶ 14} Under this assignment of error, Appellants raise three separate issues. However, prior to addressing these issues, we will consider the issue of our jurisdiction to hear this case. We are permitted to consider jurisdictional issues on our own motion. *Care Risk Retention Group v. Martin*, 191 Ohio App.3d 797, 2010-Ohio-6091, 947 N.E.2d 1214, ¶ 97 (2d Dist.), citing *State ex rel. White v. Cuyahoga Metro. Hous. Auth.*, 79 Ohio St.3d 543, 544, 684 N.E.2d 72 (1997).

{¶ 15} As was noted, the trial court in this case entered a "Decision and Verdict Entry from Bench Trial" on November 26, 2013, and a "Judgment Entry" on December 19, 2013. The

Decision and Verdict Entry explained the basis for the trial court's decision, and awarded Nemcic judgment on the first claim for relief without specifying a particular party against whom judgment was being rendered. The subsequent Judgment Entry awarded Nemcic judgment against J&M, Lori, and Aaron, in the amount of $19,069.20, and disposed of the other claims in the case as well. On January 2, 2014, the trial court then filed an "Amended Judgment Entry." The Amended Judgment Entry amended the pleadings to include J&M within the First Claim for Relief, and reaffirmed the prior judgment filed on December 19, 2013.

{¶ 16} Appellants did not appeal from either of the two earlier entries; instead, they appealed only from the judgment entry of January 2, 2014. It is well-established that:

A trial court has "no authority *sua sponte* to reopen and amend a final judgment." (Emphasis sic.) *Kemper Securities, Inc. v. Schultz*, 111 Ohio App.3d 621, 625, 676 N.E.2d 1197 (10th Dist.1996). *See also Anderson v. Consumer Portfolio Servs., Inc.*, 10th Dist. No.12AP-339, 2012-Ohio-4380, ¶ 7 ("[o]ther than a judgment that is void ab initio for lack of jurisdiction, a court has no authority to vacate or modify its final orders other than as set forth under Civ.R. 60(B)"); *GMAC, L.L.C. v. Greene*, 10th Dist. No. 08AP–295, 2008-Ohio-4461, ¶ 19. Once an order " 'has been journalized by a trial court as a final appealable order, that order cannot be modified or vacated except as provided under Civ.R. 50(B) (motion notwithstanding the verdict), Civ.R. 59 (motion for a new trial), or Civ.R. 60(B) (motion for relief from judgment).' " *Jurasek v. Gould Electronics, Inc.*, 11th Dist. No.2001-L-007, 2002-Ohio-6260, ¶ 15, quoting *Krumheuer v. Flowers & Versagi Ct. Reporters*, 8th Dist. No. 72431

(Nov. 6, 1997). *See also Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378, 380, 423 N.E.2d 1105 (1981).

*Jeffrey v. Marietta Mem. Hosp.*, 10th Dist. Franklin Nos. 11AP-492, 11AP-502, 2013-Ohio-1055, ¶ 69.

{¶ 17}  Furthermore, although " 'Civ.R. 60(A) permits a trial court, in its discretion, [and on its own initiative] to correct clerical mistakes that are apparent on the record [, it]  does not authorize a trial court to make substantive changes in judgments.' " *Jeffrey* at ¶ 72, quoting *Rowell v. Smith*, 186 Ohio App.3d 717,  2010-Ohio-260, 930 N.E.2d 360, ¶ 15 (10th Dist.). (Other citation omitted.)  "The chief distinction between clerical mistakes and substantive mistakes, for Civ.R. 60(A) purposes, is that ' "the former consists of 'blunders in execution' whereas the latter consists of instances where the court changes its mind, either because it made a legal or factual mistake in making its original determination, or because, on second thought, it has decided to exercise its discretion in a different manner." ' " *Id.*, quoting *Brewer v. Brewer*, 10th Dist. Franklin No. 09AP146, 2010-Ohio-1319, ¶ 13.  (Other citation omitted.)

{¶ 18}  In the case before us, the decision to allow amendment of the complaint was not merely a clerical issue, but was substantive.  According to Appellants, J&M's liability under an equitable theory was not raised in the complaint, and the trial of such an issue was not done with express or implied assent.  Appellants contend that they, in fact, objected to inclusion of any other issues, and that Nemcic failed to move to amend the complaint.

{¶ 19}  Civ.R. 15(B) provides that:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been

raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

{¶ 20} "Civ. R. 15(B) is consistent with the general principle that cases should be decided on the issues actually litigated at trial." *Baxter v. ABS Const. Supply Co.*, 2d Dist. Montgomery No. 1344, 1994 WL 731475, *5 (Dec. 28, 1994), citing *State ex rel. Evans v. Bainbridge Twp. Trustees*, 5 Ohio St.3d 41, 44, 448 N.E.2d 1159 (1983).

{¶ 21} Normally, "[a]n amendment under Civ.R. 15(B) must be made by motion." *Springfield v. Palco Invest. Co., Inc.*, 2013-Ohio-2348, 992 N.E.2d 1194, ¶ 51 (2d Dist.), citing *Vanderhorst v. 6105 N. Dixie Drive, L.L.C.*, 2d Dist. Montgomery No. 23491, 2009-Ohio-6687, ¶ 16. In opposing the motion, the objecting party is required to show "that he will be subject to 'serious disadvantage' if the amendment were allowed." *Palco* at ¶ 46, citing *Baltes Commercial Realty v. Harrison*, 2d Dist. Montgomery No. 23177, 2009-Ohio-5868, ¶ 42. We have inferred amendment "from the arguments of the parties and the ruling of the trial court, even though Civ.R. 15(B) was not expressly identified." *Palco* at ¶ 51, citing *Baltes* at ¶ 48.

Nonetheless, amendment under these circumstances is not merely a clerical issue, and the trial court could not have amended its prior order under Civ.R. 60(A). *See, e.g., Business Data Systems, Inc. v. Gourmet Café Corp.*, 9th Dist. Summit No. 22096, 2005-Ohio-4, ¶ 37 (noting that "[c]hanging a party's liability on a judgment is clearly a substantive change in the parties' rights and not merely the correction of a clerical error.")   Instead, the court would only have had jurisdiction to amend its prior order upon a properly-filed motion for Civ.R. 60(B) relief.

**{¶ 22}**    Accordingly, in the case before us, the trial court lacked jurisdiction on its own motion to "reopen and substantively modify" its December 19, 2013 entry, and the amended judgment entry was a "nullity."   *Jeffrey*, 10th Dist. Franklin Nos. 11AP-492, 11AP-502, 2013-Ohio-1055, at ¶ 74.   As a result, we lack jurisdiction over this appeal, and the appeal must be dismissed.

**{¶ 23}**    In view of the above holding, the sole assignment of error raised by Appellants, and the three issues raised in their assignment of error, cannot be addressed.

### III.   Conclusion

**{¶ 24}**    Based on the preceding discussion, this appeal is dismissed for lack of jurisdiction.

. . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.

Copies mailed to:

Fred S. Miller
Jose M. Lopez
Hon. Gregory Singer