[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jarvis,* Slip Opinion No. 2021-Ohio-3712.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3712

THE STATE OF OHIO, APPELLANT, *v.* JARVIS, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jarvis,* Slip Opinion No. 2021-Ohio-3712.]**

*Ohio Constitution, Article II, Section 28—Retroactive legislation—"Sierah's Law," R.C. 2903.41 through 2903.44—Violent Offender Database— Application of Sierah's Law to violent offenders who committed their offenses prior to law's effective date does not violate the Retroactivity Clause of Article II, Section 28 of the Ohio Constitution—Court of appeals' judgment reversed.*

(No. 2020-0549—Submitted April 14, 2021—Decided October 21, 2021.)

CERTIFIED by the Court of Appeals for Muskingum County,

No. CT2019-0029, 2020-Ohio-1127.

_____

**KENNEDY, J., announcing the judgment of the court.**

{¶ 1} The Fifth District Court of Appeals certified a conflict between its judgment in this case and a judgment of the Twelfth District Court of Appeals on the following question of law:

"[Does] Ohio's Sub.S.B. No. 231, 'Sierah's Law,' R.C. 2903.42 et seq., creating a violent offender database, which became effective March 20, 2019, violate[] Section 28, Article II of the Ohio Constitution, Ohio's constitutional prohibition on retroactive statutes, when retroactively applied to an offense that occurred before March 20, 2019[?]"

159 Ohio St.3d 1427, 2020-Ohio-3473, 148 N.E.3d 568, quoting 5th Dist. Muskingum No. CT2019-0029 (Apr. 17, 2020). We determined that a conflict exists and agreed to answer that question. *See id.*

{¶ 2} The answer to the question is informed by our determination in *State v. Hubbard*, ___ Ohio St.3d ___, 2021-Ohio-3710, ___ N.E.3d ___, which involved the same conflict between the judgments of the Fifth and Twelfth Districts. In *Hubbard*, we determined that "the application of Sierah's Law to conduct that occurred prior to its effective date does not violate the Retroactivity Clause of Article II, Section 28 of the Ohio Constitution." *Id.* at ¶ 5.

{¶ 3} Adhering to our determination in *Hubbard*, we reverse the judgment of the Fifth District Court of Appeals.

**Facts and Procedural History**

{¶ 4} On March 4, 2019, appellee, Albert B. Jarvis IV, pleaded guilty in the Muskingum County Common Pleas Court to one count each of kidnapping with a firearm specification, disrupting public service, and improperly handling a firearm in a motor vehicle, all stemming from an incident that occurred in November 2018.

{¶ 5} At Jarvis's sentencing hearing on April 1, 2019, he objected to being required to enroll annually and in person as a "violent offender" under "Sierah's Law," R.C. 2903.41 through 2903.44, which established a "Violent Offender Database" that is accessible only by law enforcement. He argued that requiring him to do so would violate the prohibition against retroactive laws under the

Retroactivity Clause of Article II, Section 28 of the Ohio Constitution, because his criminal conduct occurred before the effective date of Sierah's Law. The trial court overruled the objection, notified Jarvis of his duty to register as a violent offender, and sentenced him to an aggregate seven-year prison term.

{¶ 6} The Fifth District reversed the trial court's judgment, holding that the Retroactivity Clause prohibits the state from applying Sierah's Law to an offender whose criminal conduct occurred prior to the legislation's effective date. 2020-Ohio-1127, 152 N.E.3d 1225, ¶ 37. It then certified that its judgment conflicts with the Twelfth District's judgment in *State v. Hubbard*, 2020-Ohio-856, 146 N.E.3d 593, ¶ 37 (12th Dist.), in which that court held that Sierah's Law does not violate the Retroactivity Clause. We determined that a conflict exists between those judgments and agreed to resolve the conflict.

{¶ 7} Initially, Jarvis maintains that this case should be dismissed as improvidently allowed, contending that the state failed to preserve its argument that Sierah's Law is a remedial statute that may apply retroactively. However, this court unanimously denied Jarvis's motion to dismiss, in which he made the same argument, and we will not revisit that ruling now.

**Law and Analysis**

{¶ 8} The framers of the 1851 Constitution included the Retroactivity Clause in Article II, Section 28, which states that the "general assembly shall have no power to pass retroactive laws." However, "[i]n construing the Retroactivity Clause, we have determined that 'retroactivity itself is not always forbidden by Ohio law.' " *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, ¶ 31, quoting *Bielat v. Bielat*, 87 Ohio St.3d 350, 353, 721 N.E.2d 28 (2000). "Ohio courts have long recognized that there is a crucial distinction between statutes that merely apply retroactively (or 'retrospectively') and those that do so in a manner that offends our Constitution." *Bielat* at 353.

**{¶ 9}** To determine whether a statute is *unconstitutionally* retroactive, we apply a two-part test asking (1) whether the General Assembly expressly made the statute retroactive and, if so, (2) whether the law is substantive—impairing vested, substantial rights or imposing new burdens, duties, obligations, or liabilities in regard to a past transaction, such as a retroactive increase in punishment for a criminal offense. *Hubbard*, ___ Ohio St.3d ___, 2021-Ohio-3710, ___ N.E.3d ___, at ¶ 14, citing *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 8.

**{¶ 10}** The parties here agree that the General Assembly expressly made Sierah's Law retroactive, and we recognize that this court has consistently treated statutory registration laws as having retroactive application when the duty to register attaches to a conviction for conduct that occurred prior to the statutory scheme's effective date. *See, e.g.*, *Williams* at ¶ 8; *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 25, *superseded by statute on other grounds as stated in Williams* at ¶ 16; *State v. Cook*, 83 Ohio St.3d 404, 410, 700 N.E.2d 570 (1998), *superseded by statute on other grounds as stated in Williams* at ¶ 11.

**{¶ 11}** In *Hubbard*, we compared the enrollment requirements of Sierah's Law to other offender-registration schemes that had been challenged on retroactivity grounds in *Cook* ("Megan's Law," 1996 Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560), *Ferguson* (2003 Am.Sub.S.B. No. 5 ("S.B. 5"), 150 Ohio Laws, Part IV, 6558), and *Williams* (Ohio's "Adam Walsh Act," 2007 Am.Sub.S.B. No. 10). We explained:

> A comparison of the statutory registry schemes that we upheld in *Cook* and *Ferguson* and invalidated in part in *Williams* demonstrates that Sierah's Law is not unconstitutionally retroactive. The duty to enroll as a violent offender is far less burdensome than

4

the registration duties imposed by Megan's Law, S.B. 5, or the Adam Walsh Act. In comparison to sex offenders, a violent offender has to register less frequently and in fewer places. And in contrast to a sex offender's registration duties under the Adam Walsh Act, a violent offender's duty to enroll annually for ten years under Sierah's Law is far less burdensome than the requirement to register either once a year for 15 years, every 180 days for 25 years, or every 90 days for life. And unlike the database established under S.B. 5 and retained in the Adam Walsh Act, the violent-offender database itself is not a public record, cannot be accessed by the public over the Internet, and is available only to federal, state, and local law-enforcement officers. Violent offenders are not subject to community notification, and the information about them that is accessible through a public-records request differs little from information that is already available as public records.

*Hubbard* at ¶ 29.

{¶ 12} We also determined that Sierah's Law does not "violate the Retroactivity Clause by establishing 'a retroactive increase in punishment for a criminal offense.' " *Id*. at ¶ 30, quoting *White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, at ¶ 32. We noted that there was no indication that the General Assembly intended Sierah's Law to inflict punishment, and we rejected the view that Sierah's Law was punitive in effect. We observed that the enrollment requirements of Sierah's Law do not impose an affirmative disability or physical restraint, do not resemble the traditional means of punishment, and do not attach based on a finding of the offender's scienter. *Id*. at ¶ 34. Further, enrollment does not promote the traditional aims of punishment, such as retribution and deterrence. Rather, "we have recognized that offender-registration schemes like Sierah's Law

have 'long been a valid regulatory technique with [the] remedial purpose' of providing information to law enforcement in order to better protect the public." (Brackets added in *Hubbard.*) *Id.* at ¶ 39, quoting *Cook*, 83 Ohio St.3d at 419, 700 N.E.2d 570. Lastly, we determined that "[t]he de minimus, administrative requirement to appear at the sheriff's office once a year is 'reasonably necessary for the intended purpose of protecting the public,' [*Cook*] at 423, as Sierah's Law was designed to do." *Id.* at ¶ 40.

### Conclusion

{¶ 13} The Retroactivity Clause of Article II, Section 28 of the Ohio Constitution precludes the General Assembly from enacting any law that impairs vested, substantial rights or imposes new burdens, duties, obligations, or liabilities as to a past transaction, such as inflicting punishment for conduct occurring before its effective date. However, we have long recognized that felony offenders do not have any reasonable expectation that their convictions will not be made subject to future legislation, including offender-registration and address-verification laws. *See, e.g.*, *State ex rel. Matz v. Brown*, 37 Ohio St.3d 279, 281-282, 525 N.E.2d 805 (1988); *Cook* at 411-414. Further, Sierah's law does not retroactively increase the punishment for a criminal offense.

{¶ 14} For the reasons stated above, we adhere to our determination in *Hubbard* that the application of Sierah's Law to violent offenders who committed their offenses prior to its effective date does not violate the Retroactivity Clause of Article II, Section 28 of the Ohio Constitution. We reverse the judgment of the Fifth District Court of Appeals.

Judgment reversed.

FISCHER and DEWINE, JJ., concur.

O'CONNOR, C.J., concurs in judgment only.

STEWART, J., dissents, with an opinion joined by DONNELLY and BRUNNER, JJ.

_____

**STEWART, J., dissenting.**

{¶ 15} For the reasons that I stated in *State v. Hubbard*, ___ Ohio St.3d ___, 2021-Ohio-3710, ___ N.E.3d ___, I respectfully dissent and would hold that "Sierah's Law," R.C. 2903.41 through 2903.44, is punitive and therefore may not be applied retroactively based on the prohibition against retroactive punishment contained in Article II, Section 28 of the Ohio Constitution.

DONNELLY and BRUNNER, JJ., concur in the foregoing opinion.

_____

D. Michael Haddox, Muskingum County Prosecuting Attorney, and Taylor P. Bennington, Assistant Prosecuting Attorney, for appellant.

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender, for appellee.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, Michael J. Hendershot, Chief Deputy Solicitor General, and Stephen P. Carney, Deputy Solicitor General, urging reversal for amicus curiae Ohio Attorney General Dave Yost.

Alexandra S. Naiman, urging affirmance for amici curiae Ohio Justice & Policy Center, Advocating Opportunities, Ohio Domestic Violence Network, and Ohio Association of Reentry Coalitions.

_____