[Cite as *State v. Brown*, 2021-Ohio-4130.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellant,          :

                                 No. 109979

    v.                            :

MICHAEL T. BROWN,                        :

    Defendant-Appellee.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED
**RELEASED AND JOURNALIZED:** November 18, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-15-600626-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory Ochocki, Assistant Prosecuting Attorney, *for appellant.*

Cullen Sweeney, Cuyahoga County Public Defender, and Robert Blanshard McCaleb, Assistant Public Defender, *for appellee.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} The state appeals the trial court's decision granting defendant-appellee Michael Brown's motion to vacate the requirement that he enroll in the violent offender database ("VOD") established by Sierah's Law, R.C. 2903.41 through 2903.44, based on his 2016 conviction for voluntary manslaughter. The state argues that the trial court erred in granting Brown's motion because (1) the motion, filed more than three months after Brown was granted judicial release, was untimely and (2) the VOD enrollment requirements are mandatory and constitutional.

{¶ 2} For the reasons that follow, we reverse.

**Procedural History and Factual Background**

{¶ 3} On March 10, 2016, the trial court sentenced Brown to six years in prison and imposed five years of mandatory postrelease control after Brown pled guilty to one count of voluntary manslaughter, with a three-year firearm specification, and one count of having weapons while under disability. The offenses related to an incident that occurred on January 1, 2015, which resulted in the death of Delvon Kelley.

**Sierah's Law and the Violent Offender Database**

{¶ 4} On March 20, 2019, Am.Sub.S.B. No. 231, known as "Sierah's Law," went into effect, establishing a statewide VOD along with a presumption that offenders convicted of certain specified violent offenses must enroll in the VOD for a minimum period of ten years following their release from confinement. *See* R.C.

2903.41 through 2903.44 (the "VOD statutes").  The VOD enrollment requirements presumptively apply to anyone who is convicted of or who pleads guilty to any of the specified violent offenses on or after March 20, 2019 as well as to anyone who had previously been convicted of such an offense and who was serving a term of confinement for such an offense on the law's effective date.  R.C. 2903.41(A); 2903.42(A)(1).  Voluntary manslaughter is one of the violent offenses to which the VOD statutes apply.  *See* R.C. 2903.41(A) (defining "violent offender").

{¶ 5}  A violent offender who is subject to VOD enrollment requirements must report in person at the sheriff's office in the county in which the offender resides within ten days following his or her release from confinement in order to enroll in the database.  R.C. 2903.43(A)(2).  The offender is required to provide:  his or her full name (and any alias), residence address, place of employment, school, social security number and driver's license or state identification card number; the violent offense that is subject to the VOD; the license plate number, vehicle identification number and a description of vehicle(s) owned or operated by the offender and a description of any scars, tattoos or other distinguishing marks on the offender.  R.C. 2903.43(C)(2).  The violent offender must also provide his or her fingerprints and palm prints and must allow the sheriff to photograph the offender.  R.C. 2903.43(C)(3).  The violent offender must re-enroll in the VOD annually for ten

years.[1] R.C. 2903.43(D)(1). If the offender moves, he or she must notify the sheriff of his or her change of address within three business days. R.C. 2903.43(E).[2]

{¶ 6} An offender who recklessly fails to enroll, re-enroll or notify the sheriff of a change of address is guilty of a fifth-degree felony. R.C. 2903.43(I)(1), (2). Such a failure also constitutes a violation of community control sanctions, parole, postrelease control sanctions, or other type of supervised release, if applicable. R.C. 2903.43(I)(2).

{¶ 7} A violent offender may rebut the presumption that he or she is required to enroll in the VOD by filing a motion with the sentencing court prior to, or at the time of sentencing, for the violent offense (or if the offender was incarcerated at the time Sierah's Law went into effect, by filing a motion with the court that sentenced the offender for the violent offense prior to the offender's release from confinement for that offense). R.C. 2903.42(A)(2). The presumption is rebutted if, at a hearing on the matter, the offender proves by a preponderance of the evidence that the offender was not the principal offender. R.C. 2903.42(A)(4)(a). If the offender rebuts the presumption, the hearing is continued

[1] The VOD enrollment period may be extended beyond ten years if the prosecutor files a motion with the court requesting that the enrollment period be extended, and the court finds that the violent offender has violated a term or condition of a sanction imposed under the offender's sentence or has been convicted of another felony or a violent misdemeanor during the ten-year enrollment period. R.C. 2903.43(D)(2). In such a case, the offender's VOD duties "shall continue indefinitely" unless and until they are terminated under R.C. 2903.44.

[2] The duty to enroll, to re-enroll and to provide notice of a change-of-address imposed under R.C. 2903.42 through 2903.44 are collectively referred to herein as "VOD duties" or "VOD enrollment requirements." *See also* R.C. 2903.41(H).

for a second phase during which the trial court, after considering statutory criteria, determines whether, notwithstanding the rebuttal of the presumption, the nonprincipal violent offender should be required to enroll in the VOD and have all VOD duties for that offense. *Id.* If the offender fails to rebut the presumption or the trial court determines during the second phase that the nonprincipal violent offender should nevertheless be required to enroll in the VOD, the offender must enroll in the VOD and that all VOD duties apply. R.C. 2903.42(A)(4)(a)-(b).

{¶ 8} Where a violent offender is sentenced after the law's effective date, the sentencing court is required to inform the offender before sentencing of the presumption that the offender is subject to VOD enrollment requirements, the offender's right to file a motion to rebut the presumption, the procedure and criteria for rebutting the presumption, the effect of a rebuttal and the post-rebuttal hearing procedures and possible outcome. R.C. 2903.42(A)(1)(a). Where an offender was incarcerated for a violent offense at the time Sierah's Law went into effect, the "official in charge" of the institution (or his or her designee) must provide this notice to the violent offender in writing, a reasonable period of time before the offender is released from the confinement. R.C. 2903.42(A)(1)(b). Each violent offender who is subject to VOD enrollment requirements is also entitled to notice of the offender's duty to enroll in the VOD, of all VOD duties that apply and that those duties extend for ten years. Where an offender was incarcerated for a violent offense at the time Sierah's Law went into effect, the "official in charge" of the institution (or his or her

designee) is required to provide this notice to the offender before the offender is released from confinement. R.C. 2903.42(B)-(C).

**Brown' Motion to Vacate VOD Enrollment Requirements**

{¶ 9} On March 20, 2019, when Sierah's Law went into effect, Brown was serving the prison term for his voluntary manslaughter conviction. He was granted judicial release on April 15, 2020.

{¶ 10} On July 29, 2020, Brown filed a "motion to vacate violent offender database (VOD) registration." Brown argued that, as applied to him — "whose offense conduct and sentence preceded the enactment of the VOD legislation" — the VOD enrollment requirements were unconstitutionally retroactive, constituted "multiple punishment" in violation of the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution and "constitute[d] legislative interference with his judicially-imposed final judgment of conviction" in violation of the separation-of-powers doctrine.

{¶ 11} Brown maintained that his motion to vacate was timely, notwithstanding that it was filed after his release from prison, because he did not "receive written notice of the right to challenge the VOD registration" at a time "reasonably in advance of the termination of his imprisonment." Brown claimed that he was not provided any written notice related to VOD enrollment until he received his final discharge papers at the prison.

{¶ 12} The state opposed the motion. The state disputed Brown's claim that he was not timely provided the written notice required under R.C. 2903.42(A)(1)(a).

In the state's opposition brief, the assistant prosecuting attorney asserted that it was his "understanding" that VOD notices are "posted at each institution, in common areas and the law libraries," and that "[n]otices are also provided through an inmate's JPAY account." The assistant prosecuting attorney further asserted that he "believed" that "similar procedures were followed" to notify Brown of his "[VOD] obligations and opportunity to challenge those requirements."

{¶ 13} The state also argued that Brown's motion should be denied because application of the VOD enrollment requirements to Brown was constitutional. The state asserted that the VOD enrollment requirements (1) were remedial rather than substantive and, therefore, could be applied retroactively, (2) were not "criminal punishments" in violation of double jeopardy, (3) were entitled to a "strong presumption of constitutionality" and (4) did not "intru[de] upon the courts' inherent powers."

{¶ 14} On September 10, 2020, the trial court granted Brown's motion. The trial court did not state the basis upon which it granted the motion.

{¶ 15} The state appealed, raising the following single assignment of error for review:

> The trial court erred in granting defendant's motion to vacate his violent offender database registration.

{¶ 16} On May 6, 2021, this court granted the parties' joint motion to stay this appeal, pending the Ohio Supreme Court's decisions in *State v. Hubbard*, Ohio Supreme Court Nos. 2020-0544 and 2020-0625, and *State v. Jarvis*, Ohio Supreme

Court No. 2020-0549. On October 21, 2021, the Ohio Supreme Court issued its decisions in *State v. Hubbard*, Slip Opinion No. 2021-Ohio-3710, and *State v. Jarvis*, Slip Opinion No. 2021-Ohio-3712, and the stay was lifted.

**Law and Analysis**

### Timeliness of Brown's Motion

{¶ 17} The state first argues that the trial court erred in granting Brown's motion to vacate his VOD enrollment requirements because his motion was untimely. The state asserts that, pursuant to R.C. 2903.42(A)(2)(b), Brown was required to file his motion before he was released from prison and that his failure to file such a motion before his release "triggers the registration requirement pursuant to R.C. 2903.42(A)(3)." The state further contends that Brown's assertion in his motion — "unsupported by affidavit, transcript, or any other evidence" — that he did not receive the VOD notice required under R.C. 2903.42(A)(1)(b) until he received his final discharge papers was not sufficient for the trial court to grant Brown's untimely motion.[3]

{¶ 18} Brown responds that the trial court was entitled, in the "exercise its discretion," to "hear [his] constitutional challenges on their merits" because (1) his counsel owed a duty of "candor toward the tribunal" in asserting, "in an official paper filed with the trial court," that Brown did not receive any VOD notice before

---

[3] On appeal, the state does not dispute Brown's claim that he did not receive the VOD notice required under R.C. 2903.42(A)(1)(b) until he received his final discharge papers. Rather, the state contends that Brown was required to produce evidence of that fact or that the trial court was required to hold a hearing to decide the issue before the trial court could consider Brown's motion.

he received his final discharge papers, (2) it was the state, not Brown, "who first failed to satisfy a requirement of the statute" and (3) R.C. 2903.42(A)(2)(b) does not apply to Brown's motion.

{¶ 19} R.C. 2903.42(A)(2)(b), on which the state relies for its untimeliness argument, applies to motions filed by an offender "who wishes to rebut the presumption" that he or she is subject to VOD enrollment requirements by "assert[ing] that the offender was not the principal offender" in the commission of the offense at issue. Brown, however, does not dispute that he was the "principal offender" with respect to his conviction for voluntary manslaughter. In his "motion to vacate violent offender database registration," Brown was not seeking to rebut the presumption that he was the principal offender; rather, he was challenging the constitutionality of Sierah's Law — a law that imposed additional requirements on him based on his conviction for voluntary manslaughter years after he had been sentenced for that offense. Accordingly, R.C. 2903.42(A)(2)(b), by its terms, does not apply to Brown's motion.

{¶ 20} Brown filed his motion approximately three months after he received notice that he would be subject to VOD enrollment requirements. Based on the record before us, the state has not shown that the trial court abused its discretion or otherwise erred in considering Brown's motion.[4]

---

[4] Brown argued only that the state's failure to timely provide the notice required under R.C. 2903.42(A)(2)(b) excused his failure to file his motion before he was released from prison. He does not contend that the state's failure to provide timely notice under R.C. 2903.42(A)(2)(b) negated his duty to comply with VOD enrollment requirements.

**Constitutionality of Sierah's Law**

{¶ 21} The state next argues that the trial court erred in granting Brown's motion to vacate his VOD enrollment requirements because the VOD enrollment provisions are mandatory and constitutional. Brown responds that the trial court properly granted his motion because retroactive application of the VOD enrollment requirements (1) violates Ohio's Retroactivity Clause in Article II, Section 28 of the Ohio Constitution, (2) constitutes "multiple punishment" in violation of the prohibition against double jeopardy in Fifth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution and (3) violates the separation-of-powers doctrine.

{¶ 22} Whether a statute is unconstitutional is a question of law subject to de novo review. *Cleveland v. State*, 157 Ohio St.3d 330, 2019-Ohio-3820, 136 N.E.3d 466, ¶ 15, citing *Crutchfield Corp. v. Testa*, 151 Ohio St.3d 278, 2016-Ohio-7760, 88 N.E.3d 900, ¶ 16; *State v. Beard*, 8th Dist. Cuyahoga No. 109630, 2021-Ohio-2512, ¶ 28. "[S]tatutes enjoy a strong presumption of constitutionality." *State v. Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, 916 N.E.2d 1056, ¶ 8; *see also State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 147, 128 N.E.2d 59 (1955) ("A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality."). Thus, "if at all possible, statutes must be construed in conformity with the Ohio and the United States Constitutions." *State v. Collier*, 62 Ohio St.3d 267, 269, 581 N.E.2d 552 (1991).

{¶ 23} For the presumption of constitutionality to be overcome, there must be "a clear conflict between the legislation in question and some particular provision or provisions of the Constitution." *Xenia v. Schmidt*, 101 Ohio St. 437, 130 N.E. 24 (1920), paragraph two of the syllabus. A court may declare a statute unconstitutional only if it '"appear[s] beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.'" *State v. Cook*, 83 Ohio St.3d 404, 409, 700 N.E.2d 570 (1998), quoting *Dickman* at paragraph one of the syllabus. The party challenging the constitutionality of a statute bears the burden of proving the statute is unconstitutional beyond a reasonable doubt. *Collier* at 269, citing *State v. Anderson*, 57 Ohio St.3d 168, 171, 566 N.E.2d 1224 (1991); *Hoover* at ¶ 8 ("A statute will be upheld unless the challenger can meet the burden of establishing beyond a reasonable doubt that the statute is unconstitutional."); *see also Beard* at ¶ 29.

### Retroactive Application of Sierah's Law

{¶ 24} Brown contends that because the VOD's enrollment requirements "create additional burdens that did not exist at the time of [his] offense," they are punitive and violate Ohio's Retroactivity Clause.

{¶ 25} Article II, Section 28 of the Ohio Constitution states that "[t]he general assembly shall have no power to pass retroactive laws." Despite this prohibition against "retroactive laws," '"retroactivity itself is not always forbidden by Ohio law."' *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, ¶ 31, quoting *Bielat v. Bielat*, 87 Ohio St.3d 350, 353, 721 N.E.2d 28 (2000). "Ohio

courts have long recognized that there is a crucial distinction between statutes that merely apply retroactively * * * and those that do so in a manner that offends our Constitution." *Bielat* at 353.

{¶ 26} In *State v. Hubbard*, Slip Opinion No. 2021-Ohio-3710, and *State v. Jarvis*, Slip Opinion No. 2021-Ohio-3712, the Ohio Supreme Court recently addressed the retroactive application of Sierah's Law, resolving a certified conflict between the Fifth and Twelfth Districts. In 4-3 decisions, with the Chief Justice concurring with the lead opinions in judgment only, the Ohio Supreme Court held that the application of Sierah's Law to conduct that occurred prior to its effective date does not violate Ohio's Retroactivity Clause. *Hubbard* at ¶ 5, 45; *Jarvis* at ¶ 14 ("adher[ing]" to the "determination in *Hubbard* that the application of Sierah's Law to violent offenders who committed their offenses prior to its effective date does not violate the Retroactivity Clause of Article II, Section 28 of the Ohio Constitution").[5]

---

[5] Applying the two-part test set forth in *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, ¶ 27, 32, 34, and *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 8-9, the lead opinion in *Hubbard* determined that Sierah's Law was not unconstitutionally retroactive because (1) the General Assembly had expressly made Sierah's Law retroactive and (2) "Sierah's Law does not impair a vested, substantial right or impose new burdens, duties, obligations, or liabilities as to a past transaction" and "does not retroactively increase the punishment for an offense committed prior to its enactment." *Hubbard* at ¶ 2, 4-5, 14, 17, 29-30, 43, 45. The lead opinion likened the burdens imposed by Sierah's Law to those imposed under Megan's Law and amendments to Megan's Law, which were found to be remedial, rather than punitive, and upheld as constitutional in *State v. Cook*, 83 Ohio St.3d 404, 700 N.E.2d 570 (1998), and *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110. *Hubbard* at ¶ 4, 25-29.

The dissent maintained that the prohibition against "retroactive laws" in the Ohio Constitution includes the prohibition against ex post facto laws — "laws that either expressly or effectively increase the punishment for a person's past criminal conduct" — and that the court should, therefore, conduct a "full ex post facto analysis," applying the

{¶ 27} In *State v. Beard*, 8th Dist. Cuyahoga No. 109630, 2021-Ohio-2512, decided prior to the Ohio Supreme Court's decisions in *Hubbard* and *Jarvis*, this court rejected a similar constitutional challenge to Sierah's Law based on Ohio's Retroactivity Clause. The court found that the VOD duties were "less onerous" than those applicable to sex offenders under the Adam Walsh Act and that the VOD was similar to the arson offender registry, "which has been constitutionally upheld as a remedial statute." *Beard* at ¶ 43-46, 49, citing *State v. Caldwell*, 2014-Ohio-3566, 18 N.E.3d 467 (1st Dist.), and *State v. Reed*, 2014-Ohio-5463, 25 N.E.3d 480 (11th Dist.). The court concluded that "the registration requirements under Sierah's Law are not so burdensome as to amount to a form of punishment that may not be imposed retroactively" and that retroactive application of those requirements to an offender who had committed a violent offense prior to the effective date of the VOD statutes was, therefore, constitutional. *Beard* at ¶ 43, 49; *see also State v. Baber*, 1st Dist. Hamilton No. C-190338, 2021-Ohio-1506, ¶ 48; *State v. Rike*, 1st Dist. Hamilton No. C-190401, 2020-Ohio-4690, ¶ 62; *State v. Garst*, 2d Dist. Clark No. 2020-CA-51, 2021-Ohio-1516, ¶ 23; *State v. Williams*, 2d Dist. Montgomery No. 28648, 2021-Ohio-1340, ¶ 144; *State v. Misch*, 2021-Ohio-756, 169 N.E.3d 46, ¶ 14 (6th Dist.); *State v. Lamb*, 6th Dist. Lucas No. L-19-1177, 2021-Ohio-87, ¶ 58; *State v. Morgan*, 2020-Ohio-3955, 156 N.E.3d 989, ¶ 35 (9th Dist.).

United States Supreme Court's "intent-effects" test, in determining whether Sierah's Law is unconstitutionally retroactive. *Hubbard* at ¶ 47-49 (Stewart, J., dissenting). The dissent further maintained that under an "intent-effects" analysis, Sierah's Law is punitive in effect and cannot be constitutionally applied retroactively. *Id.* at ¶ 108.

{¶ 28} In light of these decisions, we find that the application of the VOD enrollment requirements to Brown, based on his 2016 conviction for voluntary manslaughter, does not violate Ohio's Retroactivity Clause.

**Double Jeopardy**

{¶ 29} Brown also claims that subjecting him to VOD enrollment requirements based on his 2016 conviction for voluntary manslaughter — after he had already served his "original sentence" — constitutes "multiple punishments" in violation of the prohibition against double jeopardy in the Fifth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution.

{¶ 30} The Fifth Amendment's Double Jeopardy Clause states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Article I, Section 10 of the Ohio Constitution states that "[n]o person shall be twice put in jeopardy for the same offense." The protections afforded by the Double Jeopardy Clauses of the Ohio and United States Constitutions are "coextensive," *State v. Mutter*, 150 Ohio St.3d 429, 2017-Ohio-2928, 82 N.E.3d 1141, ¶ 15, and "'protect[] persons from (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense."'" *State v. Christian*, 159 Ohio St.3d 510, 2020-Ohio-828, 152 N.E.3d 216, ¶ 21, quoting *State v. Roberts*, 119 Ohio St.3d 294, 2008-Ohio-3835, 893 N.E.2d 818, ¶ 11, quoting *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds*, *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989); *see also*

*State v. Williams*, 88 Ohio St.3d 513, 528, 728 N.E.2d 342 (2000) ("Although the Double Jeopardy Clause was commonly understood to prevent a second prosecution for the same offense, the United States Supreme Court has applied the clause to prevent a state from punishing twice, or from attempting a second time to criminally punish for the same offense.").

{¶ 31} A "threshold question" when analyzing an alleged double jeopardy violation based on multiple punishments is whether the government's conduct involves criminal punishment. *Williams* at 528, citing *Hudson v. United States*, 522 U.S. 93, 101, 118 S. Ct. 488, 139 L.Ed.2d 450 (1997). This court previously held in *Beard*, 2021-Ohio-2512, that the VOD enrollment requirements are not a form of "punishment," but rather, are remedial, collateral consequences of an offender's criminal act:

> "[C]lassification as a violent offender and enrollment into the violent offender database 'is a collateral consequence of the offender's criminal acts rather than a form of punishment per se.'" *State v. Hubbard*, 2020-Ohio-856, 146 N.E.3d 593, ¶ 32 (12th Dist.), quoting *Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, at ¶ 34.

*Beard* at ¶ 42, 49. Any "punishment" under Sierah's Law flows from an offender's failure to comply with that law, resulting in a new offense, not from the offender's commission of the violent offense giving rise to the offender's VOD duties. *Beard* at ¶ 42 ("A violent offender will only be subjected to punishment under Sierah's Law if he or she fails to enroll in the database, re-enroll in the database, or notify the sheriff of a change of address."); R.C. 2903.43(I)(2). Accordingly, the VOD enrollment requirements are not a second "punishment" and do not violate the Double

Jeopardy Clauses of the Fifth Amendment of the United States Constitution or Article I, Section 10 of the Ohio Constitution. *See Williams* at 528 (concluding that "[b]ecause *Cook*[, 83 Ohio St.3d 404, 700 N.E.2d 570,] held that R.C. Chapter 2950 was neither 'criminal,' nor a statute that inflicts punishment," it necessarily did not violate the Double Jeopardy Clauses of the United States and Ohio Constitutions).

### Separation of Powers

{¶ 32} Finally, Brown asserts that Sierah's Law is unconstitutional because it violates the separation-of-powers doctrine.

{¶ 33} Separation of powers "represents the constitutional diffusion of power within our tripartite government." *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 114. Although the Ohio Constitution does not contain explicit language establishing the separation of powers, the doctrine is "implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government." *S. Euclid v. Jemison*, 28 Ohio St.3d 157, 158-159, 503 N.E.2d 136 (1986); *see also State v. Sterling*, 113 Ohio St.3d 255, 2007-Ohio-1790, 864 N.E.2d 630, ¶ 22.

{¶ 34} The "essential principle" underlying the separation of powers is that "powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments, and further that none of them ought to possess directly or indirectly an overruling influence over the others." *State ex rel. Bryant v. Akron Metro. Park Dist. of Summit Cty.*, 120 Ohio

St. 464, 473, 166 N.E. 407 (1929). "But the doctrine also recognizes that our government is composed of equal branches that must work collectively toward a common cause. And in doing so, the Constitution permits each branch to have some influence over the other branches in the development of the law." *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 48 (O'Connor, J., lead opinion).

{¶ 35} As the Ohio Supreme Court explained further in *State v. Thompson*, 92 Ohio St.3d 584, 586, 752 N.E.2d 276 (2001):

> The separation-of-powers doctrine implicitly arises from our tripartite democratic form of government and recognizes that the executive, legislative, and judicial branches of our government have their own unique powers and duties that are separate and apart from the others. * * * The purpose of the separation-of-powers doctrine is to create a system of checks and balances so that each branch maintains its integrity and independence. * * *

> Under our Constitution, the General Assembly is vested with the power to make laws. Section 1, Article II, Ohio Constitution. * * * The Ohio Constitution prevents the General Assembly from exercising "any judicial power, not herein expressly conferred." Section 32, Article II, Ohio Constitution.

> Conversely, courts "possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions and cannot be directed, controlled or impeded therein by other branches of the government." *State ex rel. Johnston v. Taulbee* (1981), 66 Ohio St.2d 417, 20 Ohio Op.3d 361, 423 N.E.2d 80, paragraph two of the syllabus[.] * * * "It is indisputable that it is a judicial function to hear and determine a controversy between adverse parties, to ascertain the facts, and, applying the law to the facts, to render a final judgment." *Fairview v. Giffee* (1905), 73 Ohio St. 183, 190, 76 N.E. 865, 867.

{¶ 36} Relying solely on the Ohio Supreme Court's decision in *Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, Brown argues that, as applied to

offenders like him who were sentenced before the law's effective date, Sierah's Law violates the separation-of-powers doctrine because it "takes a valid final judgment" — in which an offender was sentenced to a prison term followed by postrelease control with no additional postrelease reporting requirements — and "reopens that judgment retroactively to require the various burdens imposed by the VOD * * * scheme."

{¶ 37} In *Bodyke*, the Ohio Supreme Court held that provisions of the Adam Walsh Act, R.C. 2950.031 and 2950.032, that required the attorney general to reclassify sex offenders "whose classifications ha[d] already been adjudicated by a court [under Megan's Law or its precursor] and made the subject of a final order" violated the separation-of-powers doctrine. *Id.* at ¶ 55, 60-61 and paragraphs two and three of the syllabus.

{¶ 38} In that case, Bodyke was sentenced in December 1999 to two years in prison after pleading no contest to one count of breaking and entering and one count of sexual battery. *Id.* at ¶ 29. Applying the version of R.C. 2950.01 that was then in effect, the trial court adjudicated Bodyke to be a sexually oriented offender, the lowest level of offender under Megan's Law. *Id.* As a sexually oriented offender, Bodyke was required to register with the county sheriff every year for ten years but was not subject to community-notification provisions. *Id.*

{¶ 39} In 2007, the General Assembly enacted the Adam Walsh Act, which repealed Megan's Law effective January 1, 2008 and replaced it with new standards for sex-offender classification and registration that divided sex offenders into "tiers"

— Tier I, Tier II, or Tier III sex offenders (or child-victim offenders) — based solely on the offender's offense. Offenders who had registered before December 1, 2007 were to be reclassified according to the new statutes. *Id.* at ¶ 20-22. The reclassification process was to be administered by the attorney general with no involvement by any court. *Id.*

{¶ 40} In November 2007 — eight years after Bodyke's no contest pleas and nearly five years after he was released from prison — the attorney general, acting pursuant to the reclassification provisions in the Adam Walsh Act, notified Bodyke that he would be reclassified. *Id.* at ¶ 30. Bodyke was reclassified a Tier III offender, which required him to personally register with the local sheriff every 90 days for the duration of his life. In addition, Bodyke was subject to community-notification provisions. *Id.*

{¶ 41} The Ohio Supreme Court held that the reclassification provisions violated the separation-of-powers doctrine because they (1) "impermissibly instruct[ed] the executive branch to review past decisions of the judicial branch" and (2) "interfere[d] with the judicial power by requiring the reopening of final judgments." *Id.* at ¶ 55, 60-61, 67 and paragraphs two and three of the syllabus. The court severed R.C. 2950.031 and 2950.032 and reinstated the classifications and registration orders previously imposed. *Id.* at ¶ 66.

{¶ 42} The situation in *Bodyke* is not the situation here. Sierah's Law does not involve the reclassification of offenders who were previously classified by judges. It does not vest the executive branch with authority to review judicial decisions. It

does not direct another branch of government to alter prior adjudications by the judiciary or otherwise "interfere" with the judiciary's exercise of judicial power.

{¶ 43} Under Sierah's Law, no other branch is required to make any factual or legal determinations or perform any other functions reserved for the judiciary. Under Sierah's Law, all persons convicted of certain specified violent offenses on or after the law's effective date and all persons serving a term of confinement for such an offense on the law's effective date are classified as "violent offenders." R.C. 2903.41(A). A "violent offender" who was the principal offender in the commission of the offense is automatically subject to the VOD duties set forth in the VOD statutes. *See* R.C. 2903.42(A)(4) ("If a violent offender does not file a motion under division (A)(2)(a) or (b) of this section, the violent offender shall be required to enroll in the violent offender database with respect to the offense that classifies the person a violent offender and shall have all VOD duties with respect to that offense for ten years after the offender initially enrolls in the database."). Although not applicable in this case — given that Brown does not dispute that he was the principal offender in the commission of the offense at issue — where a violent offender seeks to rebut the presumption that he or she is required to enroll in the VOD by proving that he or she was not the principal offender, the sentencing court holds a hearing on the issue and decides whether the violent offender is required to enroll in the VOD. *See* R.C. 2903.42(A)(4).

{¶ 44} The VOD duties established under Sierah's Law are not part of an offender's sentence. Nothing in the VOD statutes "reopens," revises or otherwise

modifies Brown's final judgment of conviction. Accordingly, Brown has not shown that Sierah's Law violates the separation-of-powers doctrine.

{¶ 45} Because the VOD enrollment requirements are mandatory for violent offenders, such as Brown, who are principal offenders and because Brown has not established beyond a reasonable doubt that Sierah's Law is unconstitutional, the trial court erred in granting Brown's motion to vacate his VOD enrollment requirements. The state's assignment of error is sustained.

{¶ 46} Judgment reversed.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
LISA B. FORBES, J., CONCUR