[Cite as *State v. Hutchins*, 2021-Ohio-4524.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                  :

    Plaintiff-Appellee,                    :
                                      Nos. 109686, 109687, and 109688

    v.                                             :

MICHAEL HUTCHINS,                               :

    Defendant-Appellant.                   :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 23, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-19-639867-A, CR-639868-A, and CR-19-639870-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, Anthony T. Miranda, Assistant Prosecuting
Attorney, *for appellee.*

Timothy Young, Ohio Public Defender, Abigail
Christopher and Timothy B. Hackett, Assistant State
Public Defenders, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant Michael Hutchins ("Hutchins") appeals his

sentence and subsequent registration as a violent offender, pursuant to R.C.

2903.41, also known as Sierah's Law, as unconstitutional. For the reasons that follow, we affirm.

**PROCEDURAL AND FACTUAL BACKGROUND**

{¶ 2} This appeal concerns the trial court's sentence pursuant to a package plea deal between Hutchins and the state that resolved Hutchins's three separate indictments in the Cuyahoga County Court of Common Pleas, General Division. All three indictments were filed on May 10, 2019, and their case numbers were: CR-19-639867-A, CR-19-639868-A, and CR-19-639870-A. These cases were transferred from the Cuyahoga County Juvenile Court. In the first case, CR-19-639867-A, Hutchins was charged with one count of escape in violation of R.C. 2921.34(A)(3), a third-degree felony, for an incident that occurred on or about October 9, 2018. In the second case, CR-19-639868-A, Hutchins was charged with one count of burglary, in violation of R.C. 2911.12(A)(1), a second-degree felony for an incident that occurred on or about November 4, 2018.

{¶ 3} Last, in CR-19-639870-A, Hutchins was charged for a series of violent assaults that occurred on February 14, 2019. On that day, Hutchins followed the victim who was leaving work and heading toward her vehicle in a parking garage. Hutchins followed the victim into the parking garage elevator, and as she exited the elevator at her floor, Hutchins attacked her from behind and then raped her on the parking garage floor where she had fallen. He then dragged her to her vehicle, demanded her keys, and attempted to get into her vehicle. The victim tried to run away but Hutchins chased and caught her and dragged her back to the vehicle.

While attempting to pull the vehicle out of the parking spot, he crashed and then fled the scene.

{¶ 4} These acts resulted in a 15-count indictment: Counts 1, 2, and 3 charged raped in violation of R.C. 2907.02(A)(2), first-degree felonies; Counts 2 and 3 carried sexually violent predator specifications. Count 4 charged kidnapping in violation of R.C. 2905.01(A)(4), a first-degree felony, with both a sexual motivation specification and a sexually violent predator specification; Count 5 charged kidnapping in violation of R.C. 2905.01(A)(2), a first-degree felony; Count 6 charged robbery, in violation of R.C. 2911.02(A)(2), a second-degree felony; Counts 7 and 8 charged gross sexual imposition in violation of R.C. 2907.05(A)(1), a fourth-degree felony; Count 9 charged grand theft, in violation of R.C. 2913.02(A)(1), a fourth-degree felony; Counts 10 and 11 charged theft, in violation of R.C. 2913.02(A)(1), a fifth-degree felony; Count 12 charged robbery, in violation of R.C. 2911.02(A)(3), a second-degree felony; Count 13 charged theft in violation of R.C. 2913.02(A)(1), a fifth-degree felony; Count 14 charged burglary, in violation of R.C. 2911.12(A)(3), a second-degree felony; and Count 15 charged theft, in violation of R.C. 2913.02(A)(1), a fifth-degree felony.

{¶ 5} The three cases were consolidated and after protracted pretrial negotiations, the cases were resolved with a single, "package deal" plea agreement that the court accepted at the plea hearing on March 6, 2020. The plea agreement consisted of an agreed sentencing range of 28-36 years in prison in exchange for which Hutchins agreed to plead guilty to the following charges: in CR-19-639867-A,

Hutchins pled guilty to an amended count of escape from R.C. 2921.34(A)(1), a third-degree felony, to R.C. 2921.34(A)(3), a fifth-degree felony. In CR-19-639868-A, he pled guilty to an amended count of burglary, from R.C. 2911.12(A)(1), a second-degree felony to R.C. 2911.12(A)(3), a third-degree felony. In CR-19-639870-A, Hutchins pled guilty to: Counts 2, 3, and 4, which were amended to delete the specifications as well as Counts 6, 9, and 12, as charged in the indictment; an amended Count 14; and to Count 15, as charged. Counts 1, 5, 7, 8, 10, 11, and 13 were nolled. Before accepting the guilty pleas, the trial court explained to Hutchins that his pleas were subject to postrelease control and that he would have to register as both a violent offender and as a sex offender.

{¶ 6} The sentencing hearing was held on March 16, 2020. The hearing started with the court reiterating to Hutchins that as a result of his plea agreement, he would be required to register as a violent offender, and as a sex offender. The court explained to Hutchins what would be required of him as a registered violent offender and sex offender. When the court asked if Hutchins understood these requirements, Hutchins acknowledged that he had signed a form that listed all the requirements explained to him by the trial court:

> THE COURT: The last paragraph on this form, Mr. Hutchins, reads: I acknowledge that the above requirements have been explained to me. I understand the requirements that I must abide by all the provisions of Ohio Revised Code Chapter Sections 2903.41 through 2903.44. There is a signature line on here, Mr. Hutchins. It kind of looks like it says Michael Hutchins with today's date. Is that your signature, sir?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. Thank you for that.

The trial court provided a similar explanation to Hutchins regarding the requirements for registering as a sex offender, and Hutchins acknowledged he signed a form stating the requirements as well. Hutchins did not object to having to register as either a violent offender or as a sex offender.

{¶ 7} The court then heard from the victim in CR-19-639870-A, who chose to attend the sentencing hearing and bravely detailed the traumatic event. The trial court then sentenced Hutchins for each case. In CR-19-639867-A, Hutchins was sentenced to 12 months in prison, to run concurrently with the other two cases, with up to three years discretionary postrelease control. In CR-19-639868-A, Hutchins was sentenced to 36 months in prison, to run concurrently with the other two cases, with three years mandatory postrelease control. Last, in CR-19-639870-A, Hutchins was sentenced to a total of 33 years in prison: 10 years on each of Counts 2, 3, and 4; 7 years on Count 6; 12 months on Count 9; 36 months on each of Counts 12 and 14; 180 days on Count 15. The court ordered Counts 2, 3, 4, and Count 15 to run consecutively to each other with the other counts running concurrently for a total prison term of 33 years.

{¶ 8} On April 14, 2020, Hutchins filed a timely notice of appeal. On July 28, 2020, Hutchins filed a motion in the lower court for a correction of jail-time credit. The same day, Hutchins filed a motion in this court requesting a stay and limited remand for the trial court to rule on his motion for jail-time credit. On July 30, 2020, this court granted the motion for a stay and ordered a limited remand. On August 11, 2020, the trial court ruled on Hutchins's motion, granting the motion

and recalculating his jail-time credit with an additional 124 days for time served in the Cuyahoga County Juvenile Detention Jail.

{¶ 9} On October 9, 2020, Hutchins filed an unopposed motion to stay the appeal pending the Ohio Supreme Court's decisions in *State v. Hubbard*, Ohio Supreme Court Nos. 2020-0544 and 2020-0625, and *State v. Jarvis*, Ohio Supreme Court No. 2020-0549, which concerned the constitutionality of Sierah's Law, Ohio's violent offender registry, and two conflicting appellate decisions regarding this law. This court granted this second motion to stay.

{¶ 10} On October 21, 2021, the Ohio Supreme Court issued its simultaneous opinions for *State v. Hubbard*, Slip Opinion No. 2021-Ohio-3710 and *State v. Jarvis*, Slip Opinion No. 2021-Ohio-3712. On October 25, 2021, this court lifted the stay in the instant case. We now turn to the merits of Hutchins's appeal.

**LAW AND ARGUMENT**

{¶ 11} On appeal, Hutchins raised two assignments of error for our review:

> I. The retroactive application of Ohio's violent offender registry violates the U.S. and Ohio Constitution's ban on retroactive laws. Article I, Sections 9 and 10 of the U.S. Constitution; and Article II, Section 28 of the Ohio Constitution.
>
> II. [Hutchins] was denied his right to effective assistance of counsel when his counsel failed to object to the imposition of the violent offender registry. Sixth and Fourteenth Amendments to the U.S. Constitution; and Article I, Sections 10 and 16 of the Ohio Constitution.

{¶ 12} Hutchins's first assignment of error alleges that the retroactive application of R.C. 2903.41-44, commonly referred to as Sierah's Law, violates the Ohio Constitution and the United States Constitution. Sierah's Law requires "the

Ohio Bureau of Criminal Investigation to establish and maintain the Violent Offender Database and to make it available to federal, state, and local law-enforcement officers." *Hubbard* at ¶ 19, citing R.C. 2903.43(F)(2). The database contains information on "violent offenders," which the statute defined to include:

> offenders who, on or after March 20, 2019, (1) are convicted of or plead guilty to aggravated murder, murder, voluntary manslaughter, kidnapping, or second-degree-felony abduction (or an attempt to commit, conspiracy to commit, or complicity in committing any of those offenses), or (2) were serving a term of confinement for any of those offenses on the law's effective date.

*Hubbard* at ¶ 19, citing R.C. 2903.41(A) and 2903.42(A)(1). Just like Hutchins, the issue that went before the Ohio Supreme Court in *Hubbard* was the constitutionality of the retroactive application of this statute, which is the requirement for offenders to register despite their offense occurring prior to the enactment of the statute. *Id.* at ¶ 8. Both Hutchins's and Hubbard's offenses took place prior to the enactment of Sierah's Law. However, the Ohio Supreme Court has definitively determined "that the application of Sierah's Law to violent offenders who committed their offenses prior to its effective date does not violate the Retroactivity Clause of the Ohio Constitution." *Id.* at ¶ 45. This court has most recently held, based on the Ohio Supreme Court's decision in *Hubbard*, that Sierah's law does not violate Ohio Constitution's Retroactivity Clause. *State v. Brown*, 8th Dist. Cuyahoga No. 109979, 2021-Ohio-4130, ¶ 28. Therefore, concerning Hutchins's right under the Ohio Constitution, this court must find the law does not violate the Retroactivity Clause. *Id.*; *Hubbard* at ¶ 45.

{¶ 13} Unlike the defendant in *Hubbard*, Hutchins also alleges the retroactive application of Sierah's Law violates his rights under Article I, Sections 9 and 10 of the United States Constitution, also known as the Ex Post Facto Clause. As detailed in the Justice Stewart's dissent in *Hubbard*, an ex post facto analysis requires the application of the "intent-effects" test pursuant to the Supreme Court's decision in *Smith v. Doe,* 538 U.S. 84, 92-93, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003):

> Under that test, a court is required to determine whether the legislature intended to enact a civil, remedial law or a criminal, punitive one. [*Smith*] at 92-93. "If the intention of the legislature was to impose punishment, that ends the inquiry." *Id.* at 92. But if the legislature intended to enact a civil, remedial law, then the court must also examine whether the law is so punitive in purpose or effect as to override the legislature's intent to enact a remedial law. *Id.* A new law that intentionally punishes criminal behavior that predated the law or that upon scrutiny is found to have the purpose or effect of punishing such criminal behavior is ex post facto and thus unconstitutional. *Id.* at 92-93, 97.

*Hubbard*, Slip Opinion No. 2021-Ohio-3710, at ¶ 48 (Stewart, J., dissenting).

{¶ 14} Whether a statutory scheme is civil or criminal is a question of statutory construction where the statute's text and structure are considered to determine the legislative objective. *Smith* at 92 (internal citations omitted). In *Hubbard*, the Ohio Supreme Court considered the Ohio General Assembly's intent in enacting Sierah's Law and after examining the statute's language found that "[t]he statutory language of Sierah's Law does not indicate that it was enacted to inflict punishment." *Hubbard* at ¶ 31. The court further found that the General Assembly "did not intend for Sierah's Law to inflict additional punishment on violent offenders." *Id.* at ¶ 32. Last, the court found that the statute was enacted for the

"remedial purpose to protect the public from violent offenders after their release from prison." *Id.* at ¶ 42. Therefore, based on the Supreme Court's findings we must find that the legislature's intent in enacting Sierah's Law was remedial and not criminal.

{¶ 15} The second part of the intent-effects test requires the court to determine if the effect of Sierah's Law is so punitive in purpose or effect as to override the legislature's intent to enact a remedial law. In *Hubbard*, the Ohio Supreme Court analyzed the various effects Sierah's Law has on offenders. *See Hubbard* at ¶ 33-42. The court based its analysis on the "useful guideposts" provided by the United States Supreme Court to determine whether the statute in effect imposes punishment:

> "Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment — retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may point in differing directions."

*Hubbard* at ¶ 33, citing *State v. Casalicchio*, 58 Ohio St.3d 178, 182, 569 N.E.2d 916 (1991), quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). Based on these guideposts, the Ohio Supreme Court went on to find that "[t]he database-enrollment requirements of Sierah's Law do not impose an affirmative disability or physical restraint * * * [t]he duty to enroll in the Violent Offender Database does not resemble traditional forms of punishment." *Hubbard*

at ¶ 34, 36.  The Ohio Supreme Court also found "the requirement to enroll in the database does not attach based on a finding of the offender's scienter * * * [a]nd enrollment does not promote the traditional aims of punishment, such as retribution and deterrence.  *Hubbard* at ¶ 38-39.  Lastly, the Ohio Supreme Court found that "the requirement to register once a year is not excessive in relation to the regulatory purpose of allowing law enforcement to know the location and description of violent offenders in order to ensure public safety."  *Hubbard* at ¶ 40.  Therefore, based on the Ohio Supreme Court's findings regarding the *de minimis* effects of Sierah's Law, we are obliged to find that the law is not so punitive in purpose or effect as to override the legislature's intent to enact a remedial law.  Based on the Ohio Supreme Court's findings, we must hold Sierah's Law does not violate Hutchins's constitutional protection against ex post facto laws pursuant to Article I, Sections 9 and 10 of the United States Constitution.  Hutchins's first assignment of error is overruled.

{¶ 16} Hutchins's second assignment of error alleges his trial counsel was ineffective for failing to object to his registration in the violent offender database.  Both the Ohio and the U.S. Constitution grant a defendant the right in all criminal prosecutions to have counsel's assistance for one's defense.  Ohio Constitution Article I, Section 10; the Sixth Amendment to the U.S. Constitution.  The United States Supreme Court has reasoned that the right to counsel for one's defense entails having the right to effective assistance of counsel.  *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).  To that end, the United States

Supreme Court has established the elements required to prevail on an ineffective assistance of counsel claim, which the Ohio Supreme Court has adopted. *See Strickland v. Washington,* 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶ 17} One must show two things to succeed on such a claim: (1) counsel substantially violated an essential duty to the client, which requires showing that counsel's representation fell below an objective standard of reasonableness, and (2) the violation prejudiced the defense, which requires showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Bradley* at 141-142, citing *Strickland* at 687-689.

{¶ 18} As a result of the Ohio Supreme Court's decision in *Hubbard*, which dictated the resolution of Hutchins's first assignment of error as discussed above, we cannot say that his trial counsel was ineffective by failing to object to Hutchins's registration in the violent offender database. *State v. Robinson*, 8th Dist. Cuyahoga No. 105951, 2018-Ohio-2058, ¶ 18 (finding that counsel was not ineffective for failing to object to jury instructions that were found to be proper). Having determined, based on the Ohio Supreme Court's findings in *Hubbard*, that Hutchins's registration did not violate any of his rights provided under the Ohio or United States Constitutions, we cannot say that his counsel's failure to object to this registration constitutes a substantial violation of any essential duty owed to Hutchins. *Id.* Nor can we say the failure to object prejudiced Hutchins in any way

because any objection would have been futile given the constitutionality of Sierah's Law. *Id.* Therefore, Hutchins has failed to demonstrate that his trial counsel's performance was deficient and that he was prejudiced.

**{¶ 19}** Hutchins's second assignment of error is overruled.

**{¶ 20}** Accordingly, the judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

ANITA LASTER MAYS, P.J., CONCURS;
KATHLEEN ANN KEOUGH, J., CONCURS IN JUDGMENT ONLY