[Cite as *State v. Shingleton*, 2022-Ohio-4740.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29363 |
| | : | |
| v. | : | Trial Court Case No. 1981-CR-76 |
| | : | |
| GEORGE RUSSELL SHINGLETON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of December, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

MAX HERSCH, Atty. Reg. No. 0099043, Office of the Ohio Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, George Russell Shingleton, appeals from a trial court judgment denying his motion to be removed from the Violent Offender Database ("VOD"). According to Shingleton, the trial court erred in these ways: (1) by denying his as-applied retroactivity claim; (2) by finding that his ex post facto claim was barred; (3) in deeming that his as-applied due process claim was underdeveloped; and (4) by also deeming that his equal protection claim was underdeveloped.

{¶ 2} For the reasons discussed below, we conclude that Shingleton's assignments of error are without merit. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 3} After a jury found Shingleton guilty of aggravated murder and aggravated robbery in 1981, he was sentenced to life in prison for the aggravated murder conviction. We affirmed the conviction in April 1982. *See State v. Shingleton*, 2d Dist. Montgomery No. 7375, 1982 Ohio App. LEXIS 15561 (April 29, 1982).[1] Subsequently, in 1999, we affirmed the denial of Shingleton's petition for post-conviction relief. *See State v. Shingleton*, 2d Dist. Montgomery No. 17546, 1999 WL 961153 (July 9, 1999). In 2013, we also affirmed the trial court's denial of Shingleton's motion for resentencing. *See State v. Shingleton*, 2d Dist. Montgomery No. 25679, 2013-Ohio-3943.

{¶ 4} On October 28, 2019, Shingleton filed a pro se motion asking the trial court

---

[1] This decision is not reported in the Westlaw database.

to find that he was not required to enroll in the VOD as required by "Sierah's Law," which was codified in R.C. 2903.41 through 2903.44. The law became effective on March 20, 2019.

{¶ 5} Shingleton's pro se motion alleged that the law was unconstitutional as retroactively applied to him, in violation of Article II, Section 28 of the Ohio Constitution and the Ex Post Facto Clause of the United States Constitution. The motion further alleged that the law violated Shingleton's equal protection rights under Article I, Section 2 of the Ohio Constitution and the Equal Protection Clause of the United States Constitution, by distinguishing between offenders who were confined and those who were not confined, but who had been convicted of or had pled guilty to the offenses listed in R.C. 2903.41(A)(1) (various violent offenses). A third branch of Shingleton's motion alleged that he was not required to register in the VOD because he was not a principal offender in this case.

{¶ 6} On December 20, 2019, Shingleton filed another motion, contending that after his release from prison, the Montgomery County Sheriff's Department had improperly enrolled him in the VOD on November 6, 2019. After determining that Shingleton was indigent, the trial court appointed counsel for him on December 23, 2019.

{¶ 7} On February 7, 2020, Shingleton's appointed counsel filed a supplemental memorandum in support of the original pro se motion. This memorandum raised only retroactivity in violation of Article I, Section 28 of the Ohio Constitution and whether Shingleton was a principal offender for purposes of registration. Counsel also filed a second supplemental memorandum the same day addressing the motion to remove

Shingleton's name from the VOD. The State then filed a response to the motions and supplements on February 28, 2020.

{¶ 8} On September 30, 2020, the trial court filed an entry concluding that Shingleton had been the principal offender, based on the court's review of all three volumes of the trial transcript and all exhibits. The court also stayed constitutional rulings pending decisions in cases the Supreme Court of Ohio then had under review. On October 16, 2020, the court granted a motion to substitute the Ohio Public Defender ("OPD") as counsel for Shingleton. The OPD then filed a notice of appeal from the trial court's September 30, 2020 decision. The appeal was docketed as Montgomery App. No. 28947.

{¶ 9} We subsequently dismissed the appeal for lack of a final appealable order. *See State v. Shingleton*, 2d Dist. Montgomery No. 28947 (Decision & Entry, Feb. 10, 2021). On April 14, 2021, the original papers in the case were returned to the trial court.

{¶ 10} After the case was returned, the OPD filed a motion on August 11, 2021, seeking to supplement Shingleton's original pro se motion. The purpose of the motion was to raise "as-applied" constitutional challenges. A supporting memorandum was filed the same day. According to the memorandum, application of Sierah's Law to Shingleton's situation violated "the Retroactivity Clause of the Ohio Constitution, the Due Process Clause of the United States Constitution, and Ohio's equivalent due process provision." Memorandum in Support of Motion to Supplement Oct. 28, 2019 Motion (Aug.11, 2021), p. 2.

{¶ 11} On August 16, 2021, the court granted the motion to supplement and stated

that it would consider the memorandum OPD had filed. Subsequently, on August 25, 2021, the State filed a response, asking the court to deny the motion to supplement.

{¶ 12} The trial court filed a final order on December 16, 2021, dismissing the facial and as-applied challenges to the statute. The court relied on two decisions of the Supreme Court of Ohio (*State v. Hubbard*, 167 Ohio St.3d 77, 2021-Ohio-3710, 189 N.E.3d 720, and *State v. Jarvis*, 167 Ohio St.3d 118, 2021-Ohio-3712, 189 N.E.3d 754), both of which had found that applying Sierah's Law to conduct occurring before the law's effective date did not violate the retroactivity provision in Article I, Section 28 of the Ohio Constitution. Final Appealable Decision, Order and Entry Denying Defendant's Motion Regarding Enrollment in the Violent Offender Database (Dec. 16, 2021) ("Final Order"), p. 2-3. The court also relied on our opinion in *State v. Wright*, 2d Dist. Montgomery No. 28368, 2021-Ohio-4107, which was issued shortly after *Hubbard* and *Jarvis*. *Id.* at p. 3. The decision also reaffirmed the finding that Shingleton was a principal offender.

{¶ 13} On January 6, 2022, the OPD filed a request for the court to issue findings of fact and conclusions of law concerning issues the court had not resolved. The court then filed a decision on January 18, 2022, denying the request. Previously that day, Shingleton had filed a notice of appeal from the December 16, 2021 judgment.[2]

{¶ 14} After the appeal was docketed as Montgomery App. No. 29363 (the current appeal), Shingleton filed a motion asking that we transfer the preparation of summaries of docket and judgment entries of Montgomery App. No. 28947 and the transcripts of

---

[2] The notice of appeal was filed at 12:47 p.m. on January 18, 2022, and the court's decision on the request for findings of fact was filed at 3:21 p.m. on January 18, 2022. Shingleton failed to file a notice of appeal concerning the January 2022 decision.

Montgomery C.P. No. 1981-CR-76 to the current appeal. We granted the motion, and the pertinent records were thereafter transferred to this case. *See State v. Shingleton*, 2d Dist. Montgomery No. 29363 (Order, Apr. 6, 2022).

{¶ 15} With this background in mind, we will consider Shingleton's assignments of error.

### III. As-Applied Retroactivity Claim

{¶ 16} Shingleton's first assignment of error states that:

The Trial Court Erred When It Found That Mr. Shingleton's As-Applied Retroactivity Claim Was Barred by *Hubbard* and *Jarvis*.

{¶ 17} Under this assignment of error, Shingleton contends that the trial court erred in declining to consider the merits of his as-applied retroactivity challenge. According to Shingleton, the decisions of the Supreme Court of Ohio in *Hubbard* and *Jarvis* only decided facial challenges to the VOD's retroactivity, and as-applied challenges are still viable.

{¶ 18} Before we consider this point, we must address the issue of which order and issues may be considered in this appeal. Although the State has not challenged jurisdiction, this is an issue we may raise on our own motion. *E.g., Nemcic v. Phelps*, 2014-Ohio-3952, 19 N.E.3d 554, ¶ 14 (2d Dist.).

{¶ 19} Shingleton filed a request for findings of fact and conclusions of law on January 6, 2022, and the trial court denied the request on January 18, 2022. The denial occurred after Shingleton's notice of appeal was filed, and no notice of appeal was filed

after the January 18, 2022 decision; instead, the notice of appeal that was previously filed specified only an appeal from the December 16, 2021 decision.

{¶ 20} An argument might be made that the notice of appeal was prematurely filed. The Supreme Court of Ohio has held that "when a party files a premature notice of appeal of a judgment, it is not ineffective; it merely becomes effective once the judgment is final." *State ex rel. Conrath v. LaRose*, Ohio Slip Opinion No. 2022-Ohio-3594, ___ N.E.3d ___, ¶ 15, citing App.R. 4(C) and *State v. Craig*, 159 Ohio St.3d 398, 2020-Ohio-455, 151 N.E.3d 574, ¶ 27. However, the judgment in question here was a final judgment, as it disposed of Shingleton's facial and as-applied claims, found that the VOD applied to Shingleton, and reaffirmed the court's prior decision that Shingleton was the principal offender and "must enroll in the VOD and abide by its regulations." Final Order at p. 3. The decision was final at that point, and if the court committed error in failing to consider some arguments, any such error could be raised on appeal.

{¶ 21} Furthermore, we cannot construe the notice of appeal to include the judgment the trial court issued the same day. *Compare S. Christian Leadership Conference v. Combined Health Dist.*, 191 Ohio App.3d 405, 2010-Ohio-6550, 946 N.E.2d 282, ¶ 11 (2d Dist.) (construing notice of appeal to include omitted part of a judgment even though it was not designated on the notice, based on appellant's "intent to appeal the entire judgment of dismissal" and the lack of prejudice to the other party).

{¶ 22} In his January 6, 2022 request for findings of fact, Shingleton specifically stated that if the trial court filed a "subsequent entry addressing the remaining issues [before January 18, 2022], undersigned counsel will file an appeal from the new entry

instead." Request for Findings of Fact and Conclusions of Law (Jan. 6, 2022), p. 3. While this indicates an intent to also appeal from any subsequent decision, we cannot construe a notice of appeal to include matters that had not yet been decided. The proper procedure would have been to file a second notice of appeal within 30 days after the trial court filed the January 18, 2022 decision. However, this was not done. As a result, we lack jurisdiction to consider the January 18, 2022 decision.

{¶ 23} We also note that the request for findings of fact referenced only the court's failure to address three issues: "(1) whether the VOD violated the Ex Post Facto Clause of the United States Constitution, (2) whether the VOD violated the state or federal equal protection clauses, or (3) whether the VOD as applied to Mr. Shingleton violated his due-process rights." (Footnote omitted.) *Id.* at p. 2.

{¶ 24} In this case, the trial court did not have a duty to issue findings of fact with respect to these issues because it was not assuming "the role of factfinder." *State ex rel. Drake v. Athens Cty. Bd. of Elections*, 39 Ohio St.3d 40, 41, 528 N.E.2d 1253 (1988). Specifically, these matters involved issues of law and no disputed facts; the only points raised in the as-applied context were that: (1) Shingleton's conviction occurred in 1981, close to 40 years before Sierah's Law was enacted; and (2) the law unequally distinguishes between persons under confinement as opposed to those who committed crimes in the past but had been released. *See* Motion (Oct. 28, 2019), p. 3-4; Memorandum in Support of October 28, 2019 Pro Se Motion (Aug. 11, 2021), at p. 8-9. As noted, the trial court's failure to address these issues are points that could be raised on appeal. The reason is that any trial court error, including failure to decide an issue, is

a proper subject for appeal.

{¶ 25} In addition, Shingleton's request for findings of fact and conclusions of law was untimely.   Civ.R. 52 provides that:

When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ. R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the findings of fact found separately from the conclusions of law.

{¶ 26} We are applying Civ.R. 52 for two reasons: (1) the VOD motion is not a criminal matter; it involves a registration statute that has been construed as a " ' "valid regulatory technique," ' "; and (2) there is no rule of criminal procedure that applies.   *See Jarvis*, 167 Ohio St.3d 118, 2021-Ohio-3712, 189 N.E.3d 754, at ¶ 12, quoting *Hubbard*, 167 Ohio St.3d 77, 2021-Ohio-3710, 189 N.E.3d 720, at ¶ 39.   *See also State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431, ¶ 10 (holding that "the plain language of Crim.R. 57(B) permits a trial court in a criminal case to look to the Rules of Civil Procedure for guidance when no applicable Rule of Criminal Procedure exists").

{¶ 27} The correct procedure in such situations is to dismiss "the motion pursuant to Civ.R. 52 as being untimely filed."   *State ex rel. Drake*, 39 Ohio St.3d at 40, 528 N.E.2d 1253.   An appeal could then be taken from the dismissal.   This appeal would not normally be part of the appeal from the original final judgment, since that judgment would

have already been filed.   An exception could exist if the decision on the motion were filed within 30 days after the original final order, and the notice of appeal included both decisions.   However, that was not the situation here.

{¶ 28} Based on the preceding discussion, our analysis will be confined to the decision specified in the notice of appeal, i.e., the trial court's December 16, 2021 decision.   We will not consider the trial court's January 18, 2022 Decision, as that decision was not appealed and the time for doing so has lapsed.   *See* App.R. 3(A) and App.R.4(A).   From a practical standpoint, however, the merits of the issues will still need to be considered.   Specifically, if the trial court failed to rule on a particular point that was properly raised, and erred in doing so, we would need to decide if the error caused prejudice requiring reversal.   *See* Civ.R. 61.

{¶ 29} Turning now to the first assignment of error, Shingleton contends that "even if a statute survives a facial challenge, it may still be unconstitutional as applied to some persons."   Appellant's Brief, p. 7.   In response, the State claims that *Hubbard* and *Jarvis* rejected the same argument that Shingleton is making about retroactivity.   Appellee's Brief, p. 6.

{¶ 30} "A facial challenge alleges that a statute, ordinance, or administrative rule, on its face and under all circumstances, has no rational relationship to a legitimate governmental purpose. * * * Facial challenges to the constitutionality of a statute are the most difficult to mount successfully, since the challenger must establish that no set of circumstances exists under which the act would be valid. * * * If a statute is unconstitutional on its face, the statute may not be enforced under any circumstances."

(Citations omitted.)   *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 21.

{¶ 31} "A party raising an as-applied constitutional challenge, on the other hand, alleges that 'the "application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional.   The practical effect of holding a statute unconstitutional 'as applied' is to prevent its future application in a similar context, but not to render it utterly inoperative." ' "   *Id.* at ¶ 22, quoting Y*ajnik v. Akron Dept. of Health, Housing Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 14. (Other citation omitted.)

{¶ 32} The burden of proof in these two situations is also different.   "To prevail on a facial constitutional challenge, the challenger must prove the constitutional defect, using the highest standard of proof, which is also used in criminal cases, proof beyond a reasonable doubt."   *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 21, citing *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus.

{¶ 33} In contrast, "[t]o prevail on a constitutional challenge to the statute as applied, the challenger must present clear and convincing evidence of the statute's constitutional defect."   *Id.*, citing *Belden v. Union Cent. Life Ins. Co.*, 143 Ohio St. 329, 55 N.E.2d 629 (1944), paragraph six of the syllabus.

{¶ 34} We also note that a decision on "whether a statute or ordinance is constitutional is a question of law that we review de novo."   (Citations omitted.)   *City of*

*Cleveland v. State*, 157 Ohio St.3d 330, 2019-Ohio-3820, 136 N.E.3d 466, ¶ 15. *See also Taylor-Jones v. Kettering Med. Ctr.*, 2d Dist. Montgomery No. 28624, 2021-Ohio-738, ¶ 14.

**{¶ 35}** In *Hubbard*, the Supreme Court of Ohio resolved a conflict between the Fifth and Twelfth Appellate Districts concerning "whether the retroactive application of 'Sierah's Law,' R.C. 2903.41 through 2903.44, to offenders who committed their offenses prior to the effective date of those provisions violates the Retroactivity Clause of Article II, Section 28 of the Ohio Constitution." *Hubbard*, 167 Ohio St.3d 77, 2021-Ohio-3710, 189 N.E.3d 720, at ¶ 1. The court also noted that in addition to accepting a certified conflict, it had "accepted Hubbard's discretionary appeal to review the following proposition of law: 'The retroactive application of Senate Bill 231 – Sierah's Law – is unconstitutional as applied to offenses committed prior to the effective date of the statute. Section 28, Article II of the Ohio Constitution.' " *Id.* at ¶ 9, citing *State v. Hubbard*, 159 Ohio St.3d 1427, 2020-Ohio-3473, 148 N.E.3d 569.

**{¶ 36}** The conflict cases each involved criminal conduct that occurred in 2018, before Sierah's Law became effective. *Hubbard*, 2021-Ohio-3710, at ¶ 6; *see also State v. Jarvis*, 2020-Ohio-1127, 152 N.E.3d 1225, ¶ 1 (5th Dist.), *rev'd*, 167 Ohio St.3d 118, 2021-Ohio-3712, 189 N.E.3d 754, ¶ 14. Both defendants were sentenced after the law became effective and were given notice that they would be subject to registration with the VOD. *Hubbard* at ¶ 6; *Jarvis* at ¶ 6.

**{¶ 37}** In considering whether the VOD registration scheme was unconstitutional, the court applied a two-part test "asking (1) whether the General Assembly expressly

made the statute retroactive and, if so, (2) whether the statute is substantive or remedial." *Hubbard*, 2021-Ohio-3710, at ¶ 14, citing *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 8. After remarking that the General Assembly had expressly made the VOD registration retroactive, the court then considered the legislation's specific terms and compared it to the sex offender statutory registration schemes. *Id.* at ¶ 19-29.

{¶ 38} As noted in *Hubbard*, "[t]he General Assembly enacted Sierah's Law to require the Ohio Bureau of Criminal Investigation to establish and maintain the Violent Offender Database and to make it available to federal, state, and local law-enforcement officers." *Id.* at ¶ 19, citing R.C. 2903.43(F)(2). "The database includes information collected by county sheriffs from 'violent offenders,' a classification defined to include offenders who, on or after March 20, 2019, (1) are convicted of or plead guilty to aggravated murder, murder, voluntary manslaughter, kidnapping, or second-degree-felony abduction (or an attempt to commit, conspiracy to commit, or complicity in committing any of those offenses) or (2) were serving a term of confinement for any of those offenses on the law's effective date." *Id.*, citing R.C. 2903.41(A) and 2903.42(A)(1).

{¶ 39} "A registration-eligible offender is required to provide to the sheriff of his or her county (1) the offender's full name and any alias used by the offender, (2) the offender's residential address and the name and address of any place of employment or school that the offender attends, (3) the offender's Social Security number and any driver's license or state-identification card number, (4) the offense committed, (5) the

license-plate number, vehicle-identification number, and description of any vehicle owned or operated by the offender or registered in the offender's name, and (6) a description of the offender's scars, tattoos, or other distinguishing marks." *Id.* at ¶ 20, citing R.C. 2903.43(C)(2). "The sheriff must photograph the offender, and the offender must provide his or her fingerprints and palmprints." *Id.*, citing R.C. 2903.43(C)(3). "The offender must update that information annually by reenrolling in the database, R.C. 2903.43(D)(1); however, if the offender changes his or her address, he or she is required to inform the sheriff of that change within three business days." *Id.*, citing R.C. 2903.43(E).

{¶ 40} Further, the VOD "is not available to the public and may be accessed only by federal, state, and local law-enforcement officers." *Id.* at ¶ 21, citing R.C. 2903.43(F)(2). "The enrollment information retained by the sheriff regarding each offender is a public record that may be inspected upon request, except that the offender's Social Security number and driver's license or state-identification card number may not be provided to the public." *Id.*, citing R.C. 2903.43(F)(3)(a) and (b). "The offender may file a motion with the court of common pleas in the county in which he or she resides requesting that any of the information be withheld from the public due to a threat to his or her safety." *Id.*, citing R.C. 2903.43(F)(3)(c).

{¶ 41} In addition, "Sierah's Law establishes a presumption that a violent offender must enroll in the database in person, reenroll annually in person, and provide notice of any change of address for ten years after the offender's initial enrollment." *Id.* at ¶ 22, citing R.C. 2903.42(A) and 2903.43(D)(1). "The offender may rebut the presumption by proving that he or she was not the principal offender." *Id.*, citing R.C. 2903.42(A)(4).

Moreover, "[a] trial court may require the offender to enroll even if the offender establishes that he or she was not the principal offender after it considers (1) whether the offender has any prior convictions for an offense of violence and whether those offenses show that the offender has a propensity for violence and (2) the results of a risk assessment, the offender's degree of culpability or involvement in the offense, and the interests of the public and safety." *Id.*, citing R.C. 2903.42(A)(4)(i) through (iv).

{¶ 42} Finally, "[a] violent offender's reckless failure to comply with Sierah's Law is a fifth-degree felony." *Id.* at ¶ 23, citing R.C. 2903.43(I). "The duty to enroll may be extended when, on the state's motion, the court determines that the offender either has been convicted of or pleaded guilty to another felony or any misdemeanor offense of violence during the enrollment period or has violated a term or condition of a sanction imposed under the offender's sentence." *Id.*, citing R.C. 2903.43(D)(2).

{¶ 43} After comparing these provisions to the sex offender registry schemes that had been upheld, the court found, for several reasons, that Sierah's Law was not unconstitutionally retroactive. Specifically, (1) VOD registration had less burdensome duties, with registrations "less frequently and in fewer places"; (2) the VOD itself was not a public record, and the public could not access it via the internet; (3) the VOD was only available to law enforcement officers; (4) violent offenders did not have to suffer community notification; and (5) available information that could be gained through a public records request differed little from information already available in public records. *Id.* at ¶ 29.

{¶ 44} Furthermore, the law did not retroactively increase punishment, since the

statutory language failed to reveal an intent to inflict punishment, and courts did not impose enrollment as part of an offender's sentence; instead, the court's role was simply to give offenders notice. *Id.* at ¶ 31. Other factors included that registration laws are law enforcement techniques which assist investigation and protect public safety; enrollment requirements do not impose affirmative disabilities or restraints (like prohibiting residence near schools); and appearing in person to enroll once a year is a " 'de minimis administrative requirement.' " *Id.* at ¶ 34, quoting *State v. Cook*, 83 Ohio St.3d 404, 418, 700 N.E.2d 570 (1998).

**{¶ 45}** In *Hubbard*, the court also discounted criminal liability based on failure to enroll. This was because other duties, like reporting child abuse, are enforced though criminal penalties. *Hubbard*, 167 Ohio St.3d 77, 2021-Ohio-3710, 189 N.E.3d 720, at ¶ 35. In addition, the court distinguished the enrollment requirement from traditional types of punishment because it does not attach based on a scienter finding, does not impose conditions on how violent offenders can live their lives, does not subject them to things like random drug testing or warrantless searches, and does not involve polices like deterrence and retribution. *Id.* at ¶ 36-39. Finally, the court stressed that requiring offenders to enroll is not excessive compared to the regulatory purpose and that violent offenders pose a risk to public safety that is not imaginary. *Id.* at ¶ 40-41. Accordingly, the court concluded that "the application of Sierah's Law to violent offenders who committed their offenses prior to its effective date does not violate the Retroactivity Clause of the Ohio Constitution." *Id.* at ¶ 45.

**{¶ 46}** *Hubbard* was a plurality decision, with two justices concurring in Justice

Kennedy's opinion, one justice concurring in judgment only, and two justices concurring with Justice Stewart's dissent. *Id.* at ¶ 45-108. The dissent argued that Sierah's Law was punitive and unconstitutionally retroactive. In addition, the dissent claimed the plurality failed to apply "the full ex post facto analysis" when considering whether the law violated Ohio's Retroactivity Clause. *Id.* at ¶ 46-108 (Stewart, J., dissenting).

{¶ 47} On the same day *Hubbard* was decided, the court reiterated its holding by reversing the Fifth District's decision in *Jarvis* (the case that conflicted with the lower court decision in *Hubbard*). *See Jarvis*, 167 Ohio St.3d 118, 2021-Ohio-3712, 189 N.E.3d 754, at ¶ 2.

{¶ 48} In rejecting Shingleton's as-applied challenge, the trial court noted in its December 16, 2021 decision that:

> Neither the *Hubbard* Court nor the *Jarvis* Court made a distinction, or carved out an exception, for offenders who were sentenced to more than a certain number of years prior to the effective date. For instance, the holding was not that Sierah's Law is unconstitutional as applied to defendants sentenced more than 15 years ago, 20 years ago or 30+ years ago. Rather, the holding of the Ohio Supreme Court was simply that "the application of Sierah's Law to conduct that occurred prior to the effective date does not violate the Retroactivity Clause of Article II, Section 28 of the Ohio Constitution."

Final Order at p. 3, quoting *Hubbard* at ¶ 5, and *Jarvis* at ¶ 2.

{¶ 49} In arguing that the trial court erred, Shingleton raises no specific matters

other than to remark that "an as-applied retroactivity challenge would involve different legal considerations, such as the time between one's offense and the effective date of Sierah's Law." Appellant's Brief at p. 8. However, Shingleton fails to suggest how his situation differs from that of any defendant who committed crimes or was imprisoned before the law's effective date. Furthermore, we fail to see how the length of time between an offense and the law's enactment has any bearing on whether the law is unconstitutionally retroactive. Specifically, if a law is effective one year after a defendant commits an offense as opposed to 20 years after the offense, the law itself is no less "retroactive." Fashioning a bright-line standard for when a law is "too" retroactive would be impossible.

{¶ 50} As an example of how an as-applied challenge works, the Supreme Court of Ohio decided that a statute of repose effective in 2005 did not violate a substantive right of most plaintiffs and was not unconstitutionally retroactive. *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 188. This repose provision in R.C. 2305.10(C), as amended, prevented "a cause of action from accruing if the product that caused an injury was delivered to an end user more than ten years before the injury occurred." *Id.* Because the injured party's cause of action never accrued, it never became a vested right, and the statute, therefore, did not facially violate Article II, Section 28 of the Ohio Constitution. *Id.*

{¶ 51} In contrast, as applied to the specific facts of the case before the court, the injured party's cause of action did accrue and was vested before amended R.C. 2305,10(C) became effective. Specifically, the party was injured In March 2005, before

the amendment became effective in April 2005. The statute therefore interfered with a vested right. And, due to the amendment, the injured party had only 34 days after his injury to file an action. *Id.* at 189-191. The court found that this was unreasonable and that the injured party should have two years after his date of injury to file suit. In this particular case, since he had filed suit within this time, his action was not barred by the statute of repose. *Id.* at ¶ 198-199.

{¶ 52} The only "facts" pertaining to an as-applied challenge in the case before us are that Shingleton was convicted in 1981 and was in prison on March 20, 2019, when Sierah's Law became effective. Nothing distinguishes Shingleton from any other violent offender who was subject to the law, whether, as the trial court noted, the sentence occurred 15, 20, or 30 years earlier – or, as we pointed out, if the offender's sentence occurred a year earlier.

{¶ 53} We also note that we have reviewed all the cases which have cited either *Hubbard* or *Jarvis.* Most involve recent situations, where a defendant committed crimes shortly before the law's effective date and either was in prison on the effective date or was sentenced afterward. *E.g., State v. Barrett*, 9th Dist. Lorain No. 20CA011667, 2021-Ohio-3956; *Wright*, 2d Dist. Montgomery No. 28368, 2021-Ohio-4107. None of the cases specifically discussed an as-applied challenge. However, in no case did the defendant's retroactivity argument prevail.

{¶ 54} A few cases involved defendants who had been imprisoned for substantial periods of time. In one, a defendant had been found guilty of crimes in 1975, had been sentenced to a prison term of 27 years to life, and was still in prison when Sierah's Law

became effective. *See State v. Mason*, 11th Dist. Portage No. 2020-P-0085, 2021-Ohio-4571, ¶ 3. After the trial court dismissed the defendant's VOD motion for lack of jurisdiction, the court of appeals reversed the judgment and remanded the case so the trial court could address the defendant's retroactivity argument. *Id.* at ¶ 9-10. While *Hubbard* and *Jarvis* had been decided at that point, the court of appeals reserved any ruling because the trial court had not yet ruled on retroactivity. *Id.* at ¶ 5. There is no further history for *Mason* following the remand.

{¶ 55} Our court also considered a case in which the defendant had been in prison for a substantial period of time. *See State v. Cochran*, 2d Dist. Clark No. 2020-CA-43, 2021-Ohio-4589. In that case, the defendant had pled guilty to various crimes, including murder, in February 2000 and had been sentenced to an aggregate prison term of 30 years to life. *Id.* at ¶ 2. In 2020, the defendant filed a motion to withdraw his guilty plea and then appealed from a decision overruling his motion. *Id.* at ¶ 5.

{¶ 56} We affirmed the judgment, noting that:

Cochran asserts that the application of Sierah's Law to him violates the Retroactivity Clause of Article II, Section 28 of the Ohio Constitution. Cochran seems to assert that such retroactive application constitutes a manifest injustice and, thus, the trial court abused its discretion by overruling his motion to withdraw his guilty plea. But, quite recently, the Ohio Supreme Court ruled that the retroactive application of Sierah's Law "to conduct that occurred prior to its effective date does not violate the Retroactivity Clause of Article II, Section 28 of the Ohio Constitution."

*State v. Hubbard*, Ohio Slip Opinion No. 2021-Ohio-3710, — N.E.3d —, ¶ 5. Given this conclusion, the retroactive application of Sierah's Law to Cochran cannot constitute a manifest injustice warranting a withdrawal of Cochran's February 2000 guilty plea.

Cochran also argues that, because the Sierah's Law requirements were not part of the plea negotiations, there was no "meeting of the minds" regarding the statute's registration requirements. From this, Cochran seems to argue the parties' failure to have negotiated and agreed to the Sierah's Law requirements created a manifest injustice requiring that he be allowed to withdraw the guilty plea.

When the Retroactivity Clause of the Ohio Constitution has not been violated, the application of a consequence not in existence at the time a plea was negotiated cannot, as a matter of law, trigger a conclusion that a manifest injustice has occurred. As such, this portion of Cochran's argument also fails.

*Id.* at ¶ 9-11.

{¶ 57} While none of the cited cases are specifically on point, we find no support for the as-applied retroactivity challenge asserted here. Accordingly, the first assignment of error is overruled.

### III. Ex Post Facto Clause Claim

{¶ 58} Shingleton's second assignment of error states that:

The Trial Court Erred When It Found That Mr. Shingleton's Federal

Ex Post Facto Claim Was Barred by *Hubbard* and *Jarvis*.

**{¶ 59}** Under this assignment of error, Shingleton contends that the trial court failed to address his federal ex post facto claim in its December 16, 2021 decision and then erroneously concluded in the January 18, 2022 order that *Hubbard* and *Jarvis* had rendered the ex post facto claim "moot." Appellant's Brief at p. 8-9.

**{¶ 60}** As discussed above, the trial court's January 18, 2022 order is not properly before us and will not be considered. The issue, therefore, is whether the trial court erred in failing to address an ex post facto claim in its December 16, 2021 final order.

**{¶ 61}** Having reviewed the record, we conclude that Singleton waived this issue by failing to properly raise it in the trial court. "It is well-settled that a litigant's failure to raise issues for the trial court's determination waives those issues for purposes of appeal." (Citation omitted.) *PHH Mtge. Corp. v. Ramsey*, 2014-Ohio-3519, 17 N.E.3d 629, ¶ 41 (10th Dist.). *See also Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997), and *State v. Brewer*, 2d Dist. Montgomery No. 26153, 2015-Ohio-693, ¶ 36.

**{¶ 62}** It is true that Shingleton mentioned the Ex Post Facto Clause of the Federal Constitution in passing in his original pro se motion. *See* Motion (Oct. 28, 2019), at p. 2-3. However, he made no specific arguments on this point. Furthermore, Shingleton's first appointed counsel made no ex post facto argument at all in the memorandum he filed after being appointed. Instead, he mentioned only that Shingleton had contended that enrollment in the VOD was "unconstitutional." Defendant's Supplemental Memorandum (Feb. 7, 2020), p. 3. The main focus was that Shingleton was not the principal offender.

*Id.* at p. 2-3.

**{¶ 63}** In its responsive memorandum, the State did briefly mention ex post facto in a single paragraph. State's Memorandum (Feb. 28, 2020), p. 8. More important, however, is the fact that after we remanded the case for lack of a final appealable order, the memorandum filed by Shingleton's counsel failed to make any specific argument pertaining to the Ex Post Facto Clause. In fact, this memorandum was directed toward the following matters:

> Even if Sierah's Law is facially constitutional, this Court should find that it cannot be constitutionally retroactive as applied to Mr. Shingleton because it burdens him based on thirty-seven year old conduct. * * * Applying Sierah's Law to Mr. Shingleton based on his 1981 conviction violates the Retroactivity Clause of the Ohio Constitution, the Due Process Clause of the United States Constitution, and Ohio's equivalent due-process provision. Article II, Section 28 (the Retroactivity Clause); the Due Process Claus of the Ohio and United States Constitutions.

Memorandum In Support of October 28, 2019 Pro Se Motion (Aug. 11, 2021), at p. 2.

**{¶ 64}** Because Shingleton did not raise the Ex Post Facto issue appropriately in the trial court, he has waived the issue. Notably, even where a party fails to address issues in the trial court, we can consider them on appeal based on plain error. *E.g., Clark v. Beyoglides*, 2021-Ohio-4588, 182 N.E.3d 1212, ¶ 20 (2d Dist.). We have also recognized that "even where waiver is clear, this court reserves the right to consider constitutional challenges to the application of statutes in specific cases of plain error or

where the rights and interests involved may warrant it." *Brewer*, 2d Dist. Montgomery No. 26153, 2015-Ohio-693, at ¶ 36, citing *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988).

{¶ 65} "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss*, 79 Ohio St.3d at 116, 679 N.E.2d 1099, syllabus. No error of that type is involved here.

{¶ 66} Other than arguing that the trial court's mootness finding was wrong, Shingleton's sole argument on appeal is that the ex post facto claim is an open question we should resolve. Having reviewed the law and the record, we disagree. This case does not present exceptional circumstances warranting reversal based on the plain error doctrine. There was also no error.

{¶ 67} In the first place, the Supreme Court of Ohio has said on a number of occasions that "[t]he Ex Post Facto Clause applies only to criminal statutes * * *." *State ex rel. Sherrills v. Franklin Cty. Clerk of Courts*, 92 Ohio St.3d 402, 750 N.E.2d 594 (2001), citing *State v. Cook*, 83 Ohio St.3d 404, 415, 700 N.E.2d 570 (1998). Consistent with this line of thought, the court has rejected a federal ex post facto challenge to the "constitutionality of the 2003 version of R.C. Chapter 2950, the Sexual Offender Registration and Notification Law." *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 1-2 and 41-43.

{¶ 68} In this regard, the court made the following observations:

Ferguson asserts that the S.B. 5 amendments, as applied to him, violate federal constitutional protections against ex post facto laws. Our analysis of this claim begins with the Supreme Court's decision in *Seling v. Young* (2001), 531 U.S. 250, 121 S.Ct. 727, 148 L.Ed.2d 734.

In *Young*, a prisoner held in civil confinement pursuant to a state law for sexually violent predators brought a petition for a writ of habeas corpus, seeking release. 531 U.S. at 253, 121 S.Ct. 727, 148 L.Ed.2d 734. A federal appellate court had required the trial court to conduct an evidentiary hearing on whether the conditions of Young's confinement rendered the state law punitive as it applied to him. *Young v. Weston* (C.A.9, 1999), 192 F.3d 870, 876. Reversing, the Supreme Court held that because the state law was civil in nature, *see In re Detention of Turay* (1999), 139 Wash.2d 379, 414, 986 P.2d 790, it could not be deemed punitive "as applied" to a single individual in violation of the Ex Post Facto Clause. *Young*, 531 U.S. at 267, 121 S.Ct. 727, 148 L.Ed.2d 734.

As noted earlier, we have found consistently that R.C. Chapter 2950 is a civil, remedial statute. Pursuant to *Young*, it therefore cannot be deemed unconstitutional on ex post facto grounds. S*ee id. See also Steinmetz v. Comm. College Dist. No. 529 Bd. of Trustees* (1978), 68 Ill.App.3d 83, 86, 24 Ill.Dec. 604, 385 N.E.2d 745 ("the constitutional prohibition against Ex post facto laws concerns criminal matters solely and

has no application to civil law"). We therefore reject Ferguson's ex post facto claim.

*Ferguson* at ¶ 41-43.

{¶ 69} In *Hubbard*, the court found that Sierah's Law is remedial and, like other offender registration schemes in Ohio, is not punitive in form or effect in a way that transforms what was intended as a civil remedy into punishment. *Hubbard*, 167 Ohio St.3d 77, 2021-Ohio-3710, 189 N.E.3d 720, at ¶ 24-45. Given these conclusions, it is clear that Sierah's Law "cannot be deemed unconstitutional on federal ex post facto grounds." *Ferguson* at ¶ 43.

{¶ 70} We also note that the Eighth District Court of Appeals has specifically considered and rejected an ex post facto claim. The court applied an " 'intent-effects' " test that the dissent in *Hubbard* had discussed, which, in turn, was based on *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). *State v. Hutchins*, 8th Dist. Cuyahoga No. 109686, 2021-Ohio-4524, ¶ 13, citing *Hubbard*, 167 Ohio St.3d 77, 2021-Ohio-3710, 189 N.E.3d 720, at ¶ 48 (Stewart, J., dissenting).

{¶ 71} Given the conclusions in *Hubbard* as to the remedial and non-punitive nature of Sierah's Law, this analysis was unnecessary. Nonetheless, after applying the "intents-effects" test, the Eighth District stated in *Hutchins* that "[b]ased on the Ohio Supreme Court's findings [in *Hubbard*], we must hold Sierah's Law does not violate Hutchins's constitutional protection against ex post facto laws pursuant to Article I, Sections 9 and 10 of the United States Constitution." *Hutchins* at ¶ 15. Thus, the only Ohio case specifically discussing ex post facto in this context fails to support Shingleton's

claim.

{¶ 72} As a final matter, while not strictly on point, we have previously held, based on *Hubbard*, that "the retroactive application of Sierah's Law to [the defendant] cannot constitute a manifest injustice warranting a withdrawal of [his] February 2000 guilty plea." *Cochran*, 2d Dist. Clark No. 2020-CA-43, 2021-Ohio-4589, at ¶ 9, citing *Hubbard* at ¶ 5.

{¶ 73} Accordingly, there is no basis for considering an ex post facto challenge and no plain error or any error occurred. The second assignment of error therefore is overruled.

## IV. As-Applied Due Process Claim

{¶ 74} Shingleton's third assignment of error states that:

The Trial Court Erred When It Deemed Mr. Shingleton's As-Applied Due-Process Claim Underdeveloped.

{¶ 75} Under this assignment of error, Shingleton contends that the trial court erred in concluding that his as-applied due process claim was underdeveloped. Again, this argument pertains to the court's January 18, 2022 decision, which is not before us. Our analysis, therefore, is whether the trial court erred in failing to consider this issue in its December 16, 2021 final order.

{¶ 76} In contrast to the ex post facto issue, Shingleton did specifically mention in his August 11, 2021 memorandum that applying Sierah's Law to the 1981 conviction violated the Due Process Clauses of the Ohio and United States Constitutions. Memorandum in Support of Oct. 28, 2019 Pro Se Motion (Aug.11, 2021), at p. 2 and 8-9.

The argument in this context was simply that " 'the degree of retroactive effect' resulting from Sierah's Law's [sic] as applied to Mr. Shingleton violates his right to due process." *Id.* at p. 9, quoting *E. Ents. v. Apfel*, 524 U.S. 498, 506, 549, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998) (Kennedy, J. concurring in judgment only).

{¶ 77} On appeal, Shingleton has not addressed the merits of this argument; he has focused on whether the trial court erred in finding in its January 2022 decision that he did not sufficiently develop the due process argument. Appellant's Brief at p. 11-12. As noted, that decision is not properly before us.

{¶ 78} In responding to Shingleton's brief, the State notes that Shingleton did not indicate in the trial court whether his claim was based on procedural or substantive due process. As to the former, the State notes that Shingleton was given proper notice of the registration duty and had a hearing. Regarding substantive due process, the State comments that this argument is merely a "retooled retroactivity/ex post facto argument, which the trial court sufficiently addressed." State's Brief at p. 14. The State further notes that *Apfel* was not decided under the Due Process Clause. *Id.* at p. 14-15.

{¶ 79} Because the trial court did not consider the due process issue, the issue, again, is whether the court erred in failing to do so. Since Shingleton raised due process, the court did err, but the question is whether the error was harmless, since "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Civ.R. 61.

{¶ 80} "The Fourteenth Amendment to the United States Constitution provides that the state shall not deprive any person of life, liberty, or property without due process of

law. Though it uses slightly different language, Article I, Section 16 of the Ohio Constitution provides the same guarantee." *In re Adoption of H.N.R.*, 145 Ohio St.3d 144, 2015-Ohio-5476, 47 N.E.3d 803, ¶ 24, citing *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540, 544-545, 38 N.E.2d 70 (1941).

{¶ 81} There are two aspects to due process: procedural and substantive. "A procedural-due-process challenge concerns the adequacy of the procedures employed in a government action that deprives a person of life, liberty, or property." *Ferguson v. State*, 151 Ohio St.3d 265, 2017-Ohio-7844, 87 N.E.3d 1250, ¶ 42. Shingleton has not claimed that the procedures in Sierah's Law are inadequate. We agree with the State that Shingleton was provided with notice and a hearing.

{¶ 82} As to substantive due process, "[w]hile the Due Process Clause of the Fourteenth Amendment on its face would seem to be concerned with only the adequacy of procedures employed when one is deprived of life, liberty, or property, the United States Supreme Court has read it to include a substantive component that forbids some government actions 'regardless of the fairness of the procedures used to implement them.' " *Stolz v. J & B Steel Erectors, Inc.*, 155 Ohio St.3d 567, 2018-Ohio-5088, 122 N.E.3d 1228, ¶ 13, quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

{¶ 83} "In a substantive-due-process challenge, '[t]he first (and often last) issue * * * is the proper characterization of the individual's asserted right.' " *Id.* at ¶ 14, quoting *Blau v. Fort Thomas Pub. School Dist.*, 401 F.3d 381, 393 (6th Cir.2005). (Other citation omitted.) "Government actions that infringe upon a fundamental right are subject to strict

scrutiny, while those that do not need only be rationally related to a legitimate government interest." *Id.*, citing *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 18. Shingleton did not suggest below that a fundamental right is concerned, and we find none. We also note the Supreme Court of Ohio's finding that a similar sex offender registration scheme involved "neither a suspect class nor a fundamental constitutional right." *State v. Williams*, 88 Ohio St.3d 513, 531, 728 N.E.2d 342 (2000). *See also State v. Gaeth*, 2022-Ohio-2906, 193 N.E.3d 1172, ¶ 9 (6th Dist.) (applying a "rational basis" test to the arson offender registry in R.C. 2909.15).

{¶ 84} Instead of asserting that a fundamental right is involved, Shingleton argued, as noted, that " 'the degree of retroactive effect' resulting from Sierah's Law's [sic] violates his right to due process." Memorandum in Support of Oct. 28, 2019 Pro Se Motion (Aug. 11, 2021) at p. 9, quoting *Apfel*, 524 U.S. at 549, 118 S.Ct. 2131, 141 L.Ed.2d 451. However, as we stressed, the Supreme Court of Ohio has already held that Sierah's Law does not have an unconstitutionally retroactive effect. *Hubbard*, 167 Ohio St.3d 77, 2021-Ohio-3710, 189 N.E.3d 720, at ¶ 2. Given Shingleton's argument in the trial court and here, we agree with the State that the due process argument is simply an attempt to reframe a retroactivity argument that has been rejected.

{¶ 85} As a final matter, *Apfel* is irrelevant. *Apfel* involved a former coal operator's liability for payments to a combined fund for miners established by the 1992 Coal Act. The operator (Eastern Enterprises) had been a signatory to prior funds but had transferred its operations to another entity in 1965. Eastern claimed that "the Coal Act, either on its face or as applied, violates substantive due process and constitutes a taking

of its property in violation of the Fifth Amendment." *Id.* at 517. The court did not decide the issue under substantive due process; instead, a plurality applied "the three factors that traditionally have informed [the court's] regulatory takings analysis." *Apfel* at 529 and 537. The court decided that a taking of Eastern's property had occurred, based on economic impact (cumulative payment liability of 50 to 100 million dollars); the Act's interference with "Eastern's reasonable investment-backed expectations"; and the fact that the governmental action in the case was "quite unusual." *Id.* at 529-537.

{¶ 86} As Shingleton notes, a concurring justice found the Coal Act unconstitutional under the Due Process Clause. This justice also reasoned that the takings analysis did not apply. *Id.* at 547. Four justices dissented from the plurality opinion and would have found the Coal Act constitutional. Like Justice Kennedy, they believed the plurality had viewed the dispute from the "wrong legal lens." *Id.* at 554 (Breyer, J., dissenting). However, based on a variety of circumstances, these justices concluded that it was not "fundamentally unfair for Congress to impose upon Eastern liability for the future health care costs of miners whom it long ago employed – rather than imposing that liability, for example, upon the present industry, coal consumers, or taxpayers." *Id.* at 566.

{¶ 87} Thus, even if one looks at *Apfel* from a substantive due process standpoint, it does not support an argument that passage of a lengthy amount of time requires a finding of unconstitutionality. Clearly it did not for the dissent in *Apfel,* as around 27 years had passed between the time Eastern transferred its coal operations and when the Coal Act was passed. And, the plurality did not rest its decision on substantive due process.

**{¶ 88}** The State has cited authority indicating that "[w]hen the U.S. Supreme Court decides a case without a majority opinion, the court's holding is limited to that which decides the case on the narrowest grounds." State's Brief at p. 15, citing *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). As a result, the State argues that *Apfel's* value as precedent is restricted to cases involving the Takings Clause. *Id.*

**{¶ 89}** Federal courts have not unanimously followed *Marks* and have also disagreed on the effect of any holding in *Apfel*. In this regard, the Eleventh Circuit Court of Appeals remarked that:

We note that the Supreme Court has commented that the *Marks* inquiry "has so obviously baffled and divided the lower courts." *Nichols v. United States*, 511 U.S. 738, 746, 114 S.Ct. 1921, 1927, 128 L.Ed.2d 745 (1994); *see also Grutter v. Bollinger*, 539 U.S. 306, 325, 123 S.Ct. 2325, 2337, 156 L.Ed.2d 304 (2003). Courts of appeal have applied several different formulations of the *Marks* rule. Although this Court has recently applied one particular formulation, *United States v. Robison*, 505 F.3d 1208, 1219-22 (11th Cir.2007), we need not in this case apply any particular formulation. This is so because Justice O'Connor's opinion for the plurality in *Eastern Enterprises* would not constitute binding authority (i.e., would not constitute the narrower ground) under any of the several formulations of the *Marks* inquiry. We need not decide whether Justice Kennedy's concurrence constitutes the narrower ground, because we can assume

*arguendo* that neither opinion constitutes the narrower ground, thus leaving us without binding authority, and leaving us with the obligation to independently evaluate the case law and determine for ourselves which approach is more consistent with the case law and more plausible.

*Swisher Internatl., Inc. v. Schafer*, 550 F.3d 1046, 1053-1054 (11th Cir.2008). *See also United States v. Alcan Aluminum Corp.*, 315 F.3d 179, 189 (2d Cir.2003) (declining to apply *Apfel*, because "[w]hen it is not possible to discover a single standard that legitimately constitutes the narrowest ground for a decision on that issue, there is then no law of the land because no one standard commands the support of a majority of the Supreme Court").

{¶ 90} Given the disagreement over the effect of *Apfel* and even *Marks*, we find no reason to wade into the federal quagmire and apply *Apfel* here. *Swisher* did go on to decide that a takings analysis was inappropriate in cases involving "a mere monetary obligation without regard to an identifiable property interest." *Swisher* at 1056. As a result, the court decided to use a due process analysis and stated that "[t]o prove that a statute violates its due process rights, the aggrieved party must demonstrate that the legislature has acted arbitrarily and irrationally." *Id.* at 1057, citing *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). "However, if the government can show that the statute has a 'legitimate legislative purpose furthered by rational means,' due process is satisfied." *Id.*, quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 191, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992). "When a statute has a retroactive effect, the government must also prove that the statute's retroactive

application furthers a legitimate legislative purpose." *Id.*, citing *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984).

**{¶ 91}** For the reasons mentioned, the Supreme Court of Ohio has already indicated that Sierah's Law is not unconstitutionally retroactive. *Hubbard*, 167 Ohio St.3d 77, 2021-Ohio-3710, 189 N.E.3d 720, at ¶ 45. As noted, Shingleton's due process argument simply parrots the retroactively argument that has been rejected. Even if that were otherwise, there would be no reason to find that the law violates substantive due process, given the comments in *Hubbard* as to the remedial, legitimate, and reasonable nature of the registration requirements.

**{¶ 92}** Shingleton has not offered any reason why the legislature acted irrationally in enacting Sierah's Law or that the government did not have a legitimate purpose. As we have already noted, the *Hubbard* decision indicates that the government's purpose was legitimate.

**{¶ 93}** Accordingly, even though the trial court erred in failing to address the due process argument, the error did not affect Shingleton's substantial rights, was not prejudicial, and does not provide a basis for reversing the court's decision. The third assignment of error therefore is overruled.

## V. Equal Protection

**{¶ 94}** Singleton's fourth assignment of error states as follows:

The Trial Court Erred When It Deemed Mr. Shingleton's Equal-Protection Argument Underdeveloped.

{¶ 95} As with other assignments of error, Shingleton contends that he did raise an equal protection argument below and that the trial court's January 2022 decision incorrectly found the argument insufficiently developed.  As evidence, Shingleton points to pages three and four of his initial pro se motion.  At that point, Shingleton's claim was that the legislation violated equal protection because it distinguished between persons who were imprisoned when the law became effective and those who were not.  Motion (Oct. 28, 2019), at p. 4.  The documents that Shingleton's counsel later filed make no further mention of equal protection.

{¶ 96} Again, we consider only whether the trial court erred in failing to address this issue in the December 16, 2021 decision.  Since Shingleton raised equal protection (although in little detail), the trial court did err in failing to discuss it.  Again, the issue becomes whether the error was prejudicial.  *E.g.*, Civ.R. 61.

{¶ 97} "The Fourteenth Amendment to the United States Constitution provides that '[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws.'  The Equal Protection Clause prevents states from treating people differently under its laws on an arbitrary basis."  *Williams*, 88 Ohio St.3d at 529-530, 728 N.E.2d 342, quoting *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 681, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (Harlan, J., dissenting).  " 'Whether any such differing treatment is to be deemed arbitrary depends on whether or not it reflects an appropriate differentiating classification among those affected; the clause has never been thought to require equal treatment of all persons despite differing circumstances.' "  *Id.*

{¶ 98} "Under the Equal Protection Clause, a legislative distinction need only be

created in such a manner as to bear a rational relationship to a legitimate state interest." *Id.*, citing *R Clements v. Fashing*, 457 U.S. 957, 963, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). "These distinctions are invalidated only where 'they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them.' " *Id.* "This rational basis analysis is discarded for a higher level of scrutiny only where the challenged statute involves a suspect class or a fundamental constitutional right." *Id.*

{¶ 99} " 'Under the rational-basis standard, a state has no obligation to produce evidence to sustain the rationality of a statutory classification.' " *Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 91, citing *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.*, 87 Ohio St.3d 55, 58, 60, 717 N.E.2d 286 (1999). "[S]tatutes are presumed to be constitutional and * * * courts have a duty to liberally construe statutes in order to save them from constitutional infirmities." *Eppley v. Tri-Valley Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 56, 2009-Ohio-1970, 908 N.E.2d 401, ¶ 12, citing *Desenco, Inc. v. Akron*, 84 Ohio St.3d 535, 538, 706 N.E.2d 323 (1999). Furthermore, "[t]he party challenging the constitutionality of a statute 'bears the burden to negate every conceivable basis that might support the legislation.' " *Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*, 127 Ohio St.3d 104, 2010-Ohio-4908, 936 N.E.2d 944, ¶ 20, quoting *Columbia Gas Transm. Corp.* at ¶ 91.

{¶ 100} As previously noted, the Supreme Court of Ohio found in *Williams* that sex offenders were not within a suspect class, nor did the sex offender registration scheme

involve a fundamental right. *Williams*, 88 Ohio St.3d at 531, 728 N.E.2d 342. The court therefore applied the rational basis analysis. *Id.* Shingleton has not argued that the more stringent scrutiny applies here, and we see no possible reason to use it, given the decision in *Williams*.

{¶ 101} In *Williams*, the court considered the same type of argument being made here, i.e., that "R.C. Chapter 2950 [which created sex offender registration] denies equal protection of the laws because the statute applies to those sex offenders who are currently imprisoned, and not to those sex offenders who were released from prison prior to the statute's enactment date." *Id.* The court rejected this argument, stating:

> The General Assembly could have rationally concluded, for example, that the burdens associated with locating sex offenders would have created an administrative and fiscal challenge that would have rendered the statute practically inoperative. *See State v. Ward* (1999), 130 Ohio App.3d 551, 566, 720 N.E.2d 603, 614. Regardless of the potential reasons for the enactment of the statute, however, the defendants have failed to present any arguments that negate the reasons that produced R.C. Chapter 2950. Accordingly, an equal protection challenge cannot be upheld. *Heller* [*v. Doe*], 509 U.S. [312] at 320, 113 S.Ct. [2637] at 2642, 125 L.Ed.2d [257] at 271 [(1993)].

*Williams*, 88 Ohio St.3d at 531, 728 N.E.2d 342.

{¶ 102} Like the affected registrants in *Williams*, Shingleton presented no argument in the trial court beyond simply asserting that distinguishing between

incarcerated persons and those released from prison violates equal protection. In light of the above comments in *Williams*, there is no possible way that the trial court's failure to rule on the issue prejudiced Shingleton.

**{¶ 103}** We do note that later amendments to the sex offender registration statute were held punitive and improperly retroactive. *See Hubbard*, 167 Ohio St.3d 77, 2021-Ohio-3710, 189 N.E.3d 720, at ¶ 28 (discussing Ohio's Adam Walsh Act, enacted in 2007, and *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 16, which held that " 'the new registration, verification, and notification requirements established by the Adam Walsh Act had become 'so punitive that its retroactive application is unconstitutional' ").

**{¶ 104}** However, the 2007 statute is not the one found constitutional on equal protection grounds in the 2000 decision in *Williams*, 88 Ohio St.3d at 531, 728 N.E.2d 342. It is also not the same as other offender registration statutes that have been upheld. *See Jarvis*, 167 Ohio St.3d 118, 2021-Ohio-3712, 189 N.E.3d 754, at ¶ 10 (noting that the court had "consistently treated statutory registration laws as having retroactive application when the duty to register attaches to a conviction for conduct that occurred prior to the statutory scheme's effective date"). Consequently, the decision in *Williams,* 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, is irrelevant here.[3]

**{¶ 105}** Finally, there was no prejudicial error based on the reasons already

---

[3] The 2011 decision in *Williams* has been criticized because it conflicts with federal circuit court decisions, which have upheld the federal registration scheme that Ohio adopted. *See State v. Blankenship*, 145 Ohio St.3d 221, 2015-Ohio-4624, 48 N.E.3d 516, ¶ 42 (O'Donnell, J., concurring in judgment only). However, the court has not chosen to revisit *Williams*. *See State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 19-20.

discussed in connection with the due process issue. In *Hubbard*, the Supreme Court of Ohio found that the VOD registration scheme was remedial, and the only conclusion that can be drawn from the decision is that the legislation was rational and based on a legitimate governmental purpose. Shingleton has offered no reasons to suggest a contrary conclusion.

{¶ 106} Based on the preceding discussion, no prejudicial error occurred, and there is no basis on which to reverse the trial court's decision. Accordingly, the fourth assignment of error is overruled.

## VI. Conclusion

{¶ 107} All of Shingleton's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Max Hersch
Hon. Mary Lynn Wiseman